JOHN MCKAY, Admr., *vs.* NEW ENGLAND DREDGING COMPANY.

Knox. Opinion January 31, 1899.

*Death by wrongful act. Damages. Stat. 1891, c. 124; Eng. Stat. 9 & 10 Vict. c. 93, (1847.)*

The statute of 1891 c. 124, giving a right of action for the death of a person "caused by the wrongful act, neglect or default" of another is to be construed as a new statute creating a new right and not as affirming or reviving an ancient right.

The injury occasioned by such death must be wholly to the beneficiaries named in the statute, and the damages to be recovered for such injury are limited to the pecuniary effect of the death upon them.

It is not essential to the right of the beneficiaries to recover damages for such death, that they should have had any legal claim against or upon the deceased.

Wherever there exists a reasonable probability of pecuniary benefit to one from the continuing life of another, however arising, the untimely extinction of that life is a pecuniary injury.

In estimating the amount which shall be the "fair and just compensation" for such injury provided by the statute, the various circumstances of the beneficiaries and the deceased and the relations between them are to be ascertained;—the certainties, probabilities and even possibilities of the future are to be considered; and from these data the amount of the compensation is to be estimated by a careful calculation of what would have been the reasonably probable pecuniary benefit to the survivor from the continued life of the deceased.

The statute makes the jury in such cases the judge of what amount will be a "fair and just compensation." The court can cut the jury's estimate down to such sum only as it thinks reasonable unbiased men would concede to be sufficient;—to a sum more than which would be manifestly excessive.

ON MOTION AND EXCEPTIONS BY DEFENDANT.

This was an action brought by an administrator to recover damages for the loss of the life of his intestate by reason of the alleged negligence of the defendant corporation. The action is brought under the provisions of chapter 124 of the public laws of 1891, for the benefit of the father and mother, they being the sole heirs of the intestate.

The verdict was for the plaintiff for $2,000.

At the conclusion of the charge of the presiding justice, counsel for the defendant requested the following instruction to the jury, which was refused:

"That the plaintiff not having proved facts and circumstances sufficient to enable the jury to return a verdict which would approximate reasonable certainty, the plaintiff is entitled to recover only nominal damages."

To the refusal to so instruct the jury the defendant took exceptions.

*D. N. Mortland and M. A. Johnson,* for plaintiff.

"The damages recoverable for negligently causing the death of a person must in every case depend largely upon what would probably have been the earnings of the deceased if he had not been killed. Other elements enter into the calculation; but the earning capacity of the deceased is always an important factor." Per WALTON, J., in *Welch* v. *M. C. R. R. Co.*, 86 Maine, 570.

The pecuniary damage, which, as we have shown, can alone be recovered in most of the states for the death of any person must be something of definite and almost commercial value. It is not necessary, however, to show that the deceased was under legal obligations to the next of kin. If they had reasonable expectation of pecuniary advantage from the continuance of his life, they may recover it. Thus if he was in the habit of making them presents at regular intervals, this would constitute a valid basis for damages.

2 Shear. & Redf. on Neg. 769; *Dalton* v. *Southeastern R. R. Co.*, 4 C. B. N. S. 269.

The statute does not limit the recovery to the actual pecuniary loss proved on the trial. *Ihl* v. *The Forty-second St. Ry. Co.*, 472 N. Y. Ct. of Appeals, 321. The court say in the case of *Oldfield* v. *N. Y. & Harlem R. R. Co.*, 14 N. Y. 310: " The jury are not limited to the assessment of damages for the actual present loss that may be proved, but they may go further and compensate for the relative injury with reference to the future. They may compensate for pecuniary injuries present and prospective." " The jury who had all the circumstances of the casualty, and the precise condition and relationship of the parties before them, should give such a compensation as they deem fair and just, keeping in view that it was to be measured by the injury done to the next of kin." The statutes of New York and Maine are almost precisely alike.

In an action for death by wrongful act, the jurors' common knowledge as to life expectancy is sufficient for the admeasurement of damages, on proof of deceased's age, habits and earning capacity, and the disposition of his earnings. *Louisville & Nashville R. R. Co.* v. *Morgan*, 22 Ala. 20.

Counsel also cited: *Kelley* v. *Chi. Mil. & St. P. Ry. Co.*, 50 Wis. 381; *Berket* v. *Knick. Ice Co.*, 110 N. Y. 504; *Armour* v. *Czeschki*, 59 Ill. 17; *Antonio St. Ry. Co.* v. *Renkin*, (Texas Civ. App.) 38 S. W. 829; *Johnson* v. *Chi. & Northern Ry.* 64 Wis. 425; *Railroad Co.* v. *Barron*, 5 Wall. (U. S.) 90.

*Clarence Hale, and Mervyn Ap Rice*, for defendant.

Counsel argued: (1.) The verdict of the jury was against the whole evidence in the case, and against the instruction of the presiding justice. The evidence did not warrant any verdict for the plaintiff, as no pecuniary loss was shown to the survivors.

(2.) If the court should allow any damages to be recovered in the case, it must be merely nominal damages.

The whole theory upon which the statute is founded is that the basis of the action is pecuniary damage and not solace, not penalty. The legislature provided distinctly that the damages should be with

reference to the pecuniary injuries, and it thereby negatives any other consideration for a jury in assessing damages.

· The only cases sustained are cases where the verdict had been distinctly formulated upon exact, positive testimony as to the amount of pecuniary loss which the plaintiff's intestate was capable of rendering to his survivors. *Hutchins* v. *St. Paul M. & M. Ry. Co.*, 44 Minn. 5; *Hall* v. *Galveston, H. & S. A. R. R. Co.*, 39 Fed. Rep. 18; *Chicago* v. *Major*, 18 Ill. 349; *Demarest* v. *Little*, 47 N. J. L. 28; *Blake* v. *Midland Ry. Co.*, 18 Q. B. 93; *Chicago, etc., R. Co.*, v. *Harwood*, 80 Ill. 88; *Wynning* v. *Detroit, etc., R. Co.*, 59 Mich. 257; *Richmond* v. *Chicago, etc., Co.*, 49 N. W. Rep. 621; *Houston and T. C. Ry. Co.* v. *Cowser*, 57 Texas, 293; *Winnt* v. *International & G. N. Ry. Co.*, 74 Texas, 32, (11 S. W. Rep. 907); *Cooper, Admr.*, v. *Lake Shore, etc., Ry. Co.*, 66 Mich. 261; *Balch, Admr.*, v. *Grand Rapids, etc., Ry. Co.*, 67 Mich. 394; *State* v. *M. C. R. R. Co.*, 76 Maine, 369. See Tiffany's Death by Wrongful Act, § 168, and cases cited, especially *Mo. Pacific Ry. Co.* v. *Lee*, 70 Texas, 496.

Since the damages are based upon the pecuniary loss of the beneficiaries, where no pecuniary loss is shown the action cannot be maintained for the recovery even of nominal damages. Tiffany, § 180; *Duckworth* v. *Johnson*, 4 Hurl. & N. 653, and cases cited; *Hurst* v. *Detroit City Ry. Co.*, 84 Mich. 539.

Nominal damages: *Chicago & Northwestern Ry. Co.* v. *Swett*, 45 Ill. 205; *City of Chicago* v. *Scholten*, 75 Ill. 471; *Quincy Coal Co.* v. *Hood*, 77 Ill. 68; Tiffany, § 180.

SITTING: PETERS, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, JJ.

EMERY, J. The jury found that the death of the plaintiff's intestate, William McKay, was "caused by the wrongful act, neglect or default" of the defendant, according to the Act of 1891, ch. 124. This finding does not seem to us so unmistakably wrong as to require us to set it aside.

The question of the amount of damages to be recovered requires

more consideration.   The action is "for the exclusive benefit" not of the estate, but of the father and mother of the deceased, they being his only heirs, he having left no widow nor children.   The father and mother are entitled to "a fair and just compensation, not exceeding five thousand dollars, with reference to the pecuniary injuries resulting to them from such death."

The right to any compensation is wholly created by the statute, and the amount of the compensation is to be measured solely by the standard prescribed by the statute.   At common law in cases like this there was no right of action in the widow, children or heirs for any compensation.   Our statute is evidently derived from the English Statute of 9 & 10 Vict. ch. 93, (1847) known as Lord Campbell's Act, as were similar statutes in others of the United States and the Canadian Provinces.   By some writers it has been suggested that these statutes are a re-appearance of the ancient *Wer-gild*, the compensation paid by a slayer to the family or clan of the person slain.   This however is purely fanciful.   The statute is to be construed as a new statute, creating a new right, and not as affirming or reviving an ancient right.

As to the measure of damages under the statute several propositions are already well established and familiar.   No punitive damages can be recovered, nor any damages by way of penalty.   No damages can be recovered for any suffering by, nor injury to, the deceased himself or his estate.   His creditors cannot be heard to complain that his estate has been diminished to their injury, nor that they have lost the chance that he would have earned something with which to pay them.   No damages can be recovered for any grief, distress of mind, loss of mere companionship or society, or injury to the affections, suffered by the beneficiaries.   Nor can damages be recovered for the value of the life to the deceased, to the State or community.   The injury for which damages can be recovered must be wholly to the beneficiaries themselves, and it is limited to the pecuniary effect of the death upon them.

It does not follow, however, that the death must cause an actual subtraction from the estate or income of the beneficiaries or from their earning power.   It is not necessary that the beneficiaries

should have any legal claim against or upon the deceased.   They have no rights under the statute as creditors.   In every person's life are matters of actual value to him which form no part of his estate and have no market value.   The education and training which children may reasonably expect to receive from a parent are of actual and commercial value to them as better fitting them to obtain an income or estate.   The loss of that education and training through the death of the parent from the fault of a defendant would be in the statute sense a pecuniary injury.   So the attentions and kindness of children to parents though adding nothing to their estate may add much to the physical comfort or ease of their life, independent of the affections or of the joy of companionship. The loss of these might under some circumstances be a pecuniary injury.

Of course loss of income or loss of estate would be pecuniary injuries.   So would be the loss of a reasonable prospect of additional income and estate in the future.   If a son had settled an annuity during his own life upon his parents, his death would be a pecuniary loss to them, as well as to his wife and minor children.

Generally where there exists a reasonable probability of pecuniary benefit to one from the continuing life of another, whether arising from legal, or family relations, the untimely extinction of that life is a pecuniary injury.

It is evident that the pecuniary damages to be recovered under this statute can never be ascertained with exactness nor with any satisfactory degree of approximation.   Unlike ordinary questions of the legal measure of damages, this relates wholly to the future. There can never be knowledge.   The conclusion arrived at must be based on probabilities instead of facts.   The only facts that can be ascertained are those which occurred before or at the time of the death.   From that data, what would probably have occurred had not the wrongful act or neglect of the defendant intervened, must be conjectured as carefully as possible.   The circumstances of the deceased and the beneficiaries are to be ascertained.   The legal, family or other ties are to be considered.   The age, capacity, health, means, occupation, temperament, habits and disposition of

the deceased and of the beneficiaries are material to be known. There is some probability that these various circumstances shown to be existing at the time of the death would have continued in more or less degree had not the death occurred. They would be subject however, to acceleration, retardation, interruption and even extinction by other circumstances which may possibly, or probably, or even surely occur after the death. These inevitable, probable, and even possible subsequent circumstances are therefore to be looked for and considered. Whatever result is arrived at must be reached from a careful balancing of the various probabilities.

It remains to make the conjecture, to balance the probabilities, for this case. At the time of the death of William McKay, his father and mother were past middle life. The mother had been an invalid for some six years, unable to do any work or to walk, and for some time had been unable to feed herself. The father was somewhat infirm from rheumatism, being at times unable to work. They were too poor to employ a nurse, and the mother was cared for by the father and the two younger sons aged fifteen and seventeen. The deceased son was aged twenty-three and a half years at the time of his death. He had learned the stone cutter's trade during his minority. After arriving at his majority he worked at his trade for the most of his time in Quincy, the home of his parents, and turned all of his earnings into their home. He also worked at his trade for a little time at Hallowell and at Leadbetter's Island and occasionally sent home little sums of money to his mother. He did not have constant employment, but does not appear to have been lazy or unusually idle. He sought at various places for work at his trade, and failing to obtain that, he worked as a laborer in the defendant's quarry where he was killed. It is not shown that he sent home any money while in defendant's employ. His wages as laborer were fifteen cents an hour, out of which he had to pay his board of $20 per month. What wages he got at his trade was not shown, but the father at the same trade was paid $2 per day. The only home the deceased had was with his parents in Quincy, to which he seems to have returned in the intervals of employment, and paid his board there.

He was of some pecuniary assistance to his parents, though evidently quite small.   He rendered this assistance after he became of age.   In view of the increasing age and infirmity of his parents, there is a probability that he would have continued to furnish more or less money or service during their lives according to their needs. When at home with them it is probable he would have aided in the care of his invalid mother, and otherwise have aided his parents by personal services.   True, he might not.   He might have died, might have become sick, crippled or dissipated, and a burden rather than a help to his parents.   He might have married and this marriage, while it might have brought to the parents the service and attention of a daughter, might on the other hand have absorbed all his earnings.   The parents themselves might have died the next day.   Still he had a regular expectancy of life and so had they. There was a probability that things for a while at least would continue somewhat as they were,—that marriage even would not end his assistance to his parents.

In fine, parents in their condition would be accounted more fortunate pecuniarily with such a son alive than with him dead.   So far as their condition was made less fortunate pecuniarily by the wrongful act or default of the defendant, they are entitled to recover enough damages to make them "a fair and just compensation."   Such damages would evidently be more than nominal, and hence the defendant's contention on this point cannot be sustained.

The jury assessed the damages at $2000.   This is manifestly disproportionate and extravagant.   Assuming the parents to have been forty-five years old, (there being no direct statement of their age in the evidence) $2000 would procure them an annuity of nearly $140 during the life of the survivor.   It is not at all probable that the deceased would have averaged that much each year in contributions of money and services.   His employment was not at all constant.   He had to go about seeking employment, and at the time of his death was working as laborer at fifteen cents an hour.   His expenses for board at that time were $20 per month. His yearly margin over expenses would probably not have been over $100 at the most.   It is not to be expected, however, that

he would' limit himself to absolutely necessary expenses, and send the surplus to the parents. It would be natural and therefore probable that he would give himself some indulgences, especially as there were two other nearly grown sons with his parents.

In fine, we think that $70 per year would be the extent of any probability of his contribution in money and services during the lives of his parents. To produce that sum as annuity for a person at the age of forty-five would require somewhat less than $1000. The chance that he would have accumulated an estate which his parents would live to inherit is too remote for consideration.

But it would not be accurate nor just to assume that the parents would receive the value of $70 per year with the regularity and certainty of an annuity from a responsible annuity company. There were many contingencies threatening even that sum. Industrial changes might throw him out of employment at his trade, and reduce him to a mere laborer. He might die from other causes, become sick or dissipated. He might marry and have to struggle to support a family of his own, or he might weary of well-doing for his parents, and practically cease caring for them any farther, however well able to do so. Other contingencies might also be suggested.

Figuring upon all the probabilities it seems to us that a comparatively small sum would be "a fair and just compensation" for the pecuniary injury to the parents. But the amount of such compensation is not for us to determine. The statute makes the jury the judges of that amount, and we must and do yield much respect to their judgment. We cannot cut down their award to what seems to us fair and just. We can only cut it down to a sum which we think reasonable, unbiased men will concede to be sufficient—to a sum more than which would be manifestly excessive. After much reflection and conference, we fix that sum at $750, though a minority think that too much. The plaintiff must accept that amount or submit to a new trial.

*New trial granted unless plaintiff will remit all above*
*$750 within thirty days after filing of the rescript.*