### KATHERINE L. CONLEY, Admx.

*vs.*

### THE MAINE CENTRAL RAILROAD COMPANY.

### Sagadahoc.    Opinion March 16, 1901.

*Negligence.   Death.   Damages.   Stat. 1891, c. 124.*

The damages recoverable for death by a wrongful act are limited by statute to the amount of "pecuniary injuries" sustained by the persons for whose benefit the action is brought. They must be estimated according to reasonable probabilities, as well those which tend to make the pecuniary injury less, as those which tend to increase it.

Upon a motion for a new trial in which the jury returned a verdict of sixteen hundred dollars for the benefit of a widow and adult children, it appeared that the deceased was seventy-three years old,—a laborer at odd jobs, working only a part of the time,—and whose earnings would not exceed $225 per annum.

*Held;* that there is no reasonable probability whatever that the beneficiaries, under these conditions, have sustained by the intestate's death a pecuniary injury to the extent of sixteen hundred dollars either by loss of gifts or support during life, or by loss of increased inheritance after death, or both. The verdict for that amount is, therefore, clearly excessive.

While it is not the province of the court to assess damages, or to fix what is "reasonable and just compensation" for the pecuniary injury, in such cases, it may express the extreme limit beyond which a verdict should be deemed clearly wrong. *Held;* that the limit in this case is seven hundred and fifty dollars.

The court considers that the evidence warranted the jury in finding that the death of the plaintiff's intestate was caused by the negligence of the defendant; and even if the deceased was negligent in getting into the path of the defendant's approaching ferry boat, still that such negligence was not the proximate cause of the collision and death.

If the servants of the defendant saw the deceased in the path of the ferry-boat, in a place of danger, though he was there negligently, they were bound to

use due care to prevent a collision; and it is not clear that a jury would not be warranted in finding that by the exercise of ordinary care and prudence the collision might have been averted.

On motion by defendant.    Damages reduced.

Action on the case for negligence, wherein the plaintiff sought to recover, under the statute of 1891, c. 124, pecuniary damages sustained by the widow and seven children of Thomas Conley, deceased.    The accident was on September 9, 1899, and was due to a collision between a row boat propelled by the deceased and the defendant's ferry-boat Hercules, proceeding from Woolwich to Bath.

The case is stated in the opinion.

*F. E. Southard*, for plaintiff.

*O. D. Baker*, for defendant.

SITTING:  WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

SAVAGE, J.    Action for damages under chapter 124 of the public laws of 1891, for the death of the plaintiff's intestate, said to have been caused by the negligence of the defendant.    The action is brought for the benefit of the widow and children of the deceased.

The case is before us on defendant's motion for a new trial, on the grounds that the verdict was against law and evidence, and that the damages were excessive.    The exceptions taken are now waived.

We think the testimony introduced by the plaintiff, if believed, would warrant a jury in finding that the deceased, Thomas Conley, on the morning of the accident, was on the Kennebec river at Bath in a row boat; that the steam railroad ferry-boat, Hercules, owned and operated by the defendant, was at the same time making a trip from the easterly or Woolwich side of the river to its slip in Bath; that Conley had rowed his boat from a point on the Bath shore northerly from the ferry slip, out by the northerly pier of the ferry slip; that when Conley was nearly abreast of the end of the pier and from fifty to seventy-five feet easterly from it, and in the path

of the ferry-boat, a warning whistle was sounded by the captain of the Hercules, then one hundred and fifty or more feet from Conley and proceeding directly towards him; that Conley and the servants of the defendant in charge of the ferry-boat were in plain view of each other; and that when the whistle was sounded, Conley turned his boat up the river and began to row hard; that there was a strong ebb tide, and that Conley appeared to be unable to make headway against the tide or get out of the way of the approaching ferry-boat; that the speed of the ferry-boat was not perceptibly slackened until after her bow had entered the slip; that in the meantime the ferry-boat had collided with Conley's boat, and that the starboard paddle-wheel of the ferry-boat still revolving forward had struck Conley's boat and broken it in pieces, whereby Conley was precipitated into the water and drowned.

On the other hand, the evidence introduced by the defendant tended to show that when Conley came into the view of the officers of the Hercules, he was standing in his boat, shoving it out by the end of the north pier of the ferry slip which previous to that moment had hidden him from sight; that the Hercules was then moving forward at full speed and was only about fifty feet from the outer end of the pier and from Conley himself; that as soon as he appeared in sight, the captain of the ferry-boat sounded the alarm whistle, then immediately caused the starboard paddle-wheel to stop, and the port wheel to be reversed; that the effect of these movements taken in connection with the action of the tide, was to swing the ferry-boat away from Conley; and that if Conley had remained in the position he was when last seen by the captain in the pilot-house, the ferry-boat would have cleared him by forty feet; in short, that everything was done which could be done to avert a collision. In reality, the testimony introduced by the defendant seems to exclude the possibility of liability on its part.

It is thus seen, that the accounts of the collision as given by the witnesses for the plaintiff, and by those for the defendant, are diametrically opposed to each other at vital points. The jury, evidently, was more impressed by the former; and although, if we were sitting as jurors, we might come to a different conclusion, we

do not feel authorized to interfere. The credibility of witnesses is a matter peculiarly within the province of the jury, and its conclusions in this respect should not be disturbed, unless manifest error is shown, or it appears that the verdict is the result of passion or prejudice.

It requires no argument to show that the testimony, already outlined, of the three persons introduced by the plaintiff, who claim to have been eye-witnesses, is sufficient, if believed, to sustain a finding that Conley's death was caused by the negligence of the defendant.

But, to this, the defendant answers that Conley, himself, was guilty of negligence in rowing his boat into the path of the ferryboat at that particular time and place; that he knew, or ought to have known, of the near approach of the ferry-boat; that it was negligence in him to put himself then into a place of extreme danger; and that this negligence contributed to the collision and fatal consequences. Hence the defendant claims that Conley's contributory negligence is a bar to a recovery in this action.

While the plaintiff does not admit that Conley was negligent she replies that, however negligent he may have been in getting into the path of the ferry-boat, still such negligence was not the proximate cause of the injury; that the negligence of Conley preceded, and was independent of the negligence of the defendant; and that notwithstanding Conley's negligence, the collision could have been avoided by the use of ordinary care and caution, at the time, by the defendant; and hence, that Conley's conduct did not contribute to produce the collision.

The principles of law relied upon by the plaintiff are well settled. We need only refer to the recent case of *Atwood* v. *Railway Co.*, 91 Maine, 399, in which they are fully discussed. We think they are applicable to such a state of facts as is presented by the testimony introduced by the plaintiff, and which the jury evidently found to be true. If Conley and the Hercules were respectively where the plaintiff's witnesses say they were, at the time the alarm whistle was sounded, the Hercules approaching Conley, and Conley apparently unable to make headway against the tide and to get

out of the path of the Hercules, the defendant was bound to exercise due care to prevent a collision. And we cannot say that a jury would not be warranted in finding that by the exercise of ordinary care and prudence on the part of the defendant, the collision might have been averted. The verdict as to liability is therefore sustainable.

But the verdict is manifestly too large. The deceased was seventy-three years old. He was a laboring man,—working at odd jobs, without steady employment. One son testified that "he worked mostly in the summer. He could not work in the winter except to shovel snow and fish—catch smelts. In the summer he worked in pleasant weather, good weather, when he could," . . but "not steady all summer." This is probably a fair account of the old man's labor. He earned, it is said, when he worked, from $1.50 to $2.00 a day. There is no reasonable probability that his earnings exceeded $200 or $225 a year. They were probably less. His expectancy of life was only about seven and one-half years.

The plaintiff is entitled to recover the amount of pecuniary benefits which the widow and children have probably lost by his death, and no more. *McKay* v. *Dredging Co.*, 92 Maine, 454. This verdict can be sustained only upon the suppositions that for the full period of his expectancy of life he would have continued to earn $225 a year, and that practically all of his earnings would have come to his beneficiaries either by gifts or support during life, or by way of increased inheritance after death or both. But such suppositions are not based upon reasonable probabilities. There is every probability, on the contrary, that increasing infirmities would accompany increasing years, that as he grew older he would become less able to work, and be compelled to work for lower wages. Not only this. Old age naturally brings illness and weakness, and increasing demands for comforts and nursing and medicines and medical attendance. It is not only probable that Mr. Conley would have earned less as he grew old, but that he would have been obliged to spend more for himself. This is according to the course of nature, and there is nothing in the evidence in this particular case which rebuts this expectation. These proba-

bilities should not be overlooked. Although in this class of cases the pecuniary injury sustained is necessarily indefinite, it is not therefore illimitable. It should be estimated, not guessed at. All reasonable probabilities must be taken into account, as well those which tend to make the pecuniary injury less, as those which tend to increase it. Applying these rules to this case, it is demonstrable that the jury erred in assessing damages. There can be no reasonable probability that these beneficiaries have sustained by Mr. Conley's untimely death a pecuniary injury to the extent of sixteen hundred dollars. In such case, the duty of the court is clear. While it is not our province to assess damages, or to fix what is "reasonable and just compensation" for the pecuniary injury, we may express the extreme limit beyond which a verdict should be deemed clearly wrong. We think that limit in this case is seven hundred and fifty dollars.

*Exceptions overruled.*

*If the plaintiff within 30 days after the filing of the rescript remits all of the verdict in excess of $750, motion for new trial overruled; otherwise, motion sustained, and new trial granted.*