ELLEN McCARTHY, Admx.,

*vs.*

FULLER CLAFLIN AND E. C. HORN.

Androscoggin.    Opinion November 28, 1904.

*Negligence.   Master and Servant.   Damages.*

By the breaking of a defective putlog in a mason's staging, on a building then being erected by the defendants, the plaintiff's intestate, who was at work for the defendants, as a brick mason, was precipitated to the ground and killed.

1.  If the defendants undertook to furnish the staging as a completed structure for the use of the bricklayers, it was their duty to use reasonable care to see that the staging in all its parts was reasonably safe for the use intended, and for negligence of servants selected by them to construct the stage, they would be responsible.

2.  But if the defendants only undertook to furnish materials for the staging, and furnished them sufficient in kind and suitable in character, and furnished suitable men in the masons' crew to use them, and if the masons within the scope of their employment undertook to erect and did erect the staging for themselves, out of the materials so furnished, using their own judgment and free from the defendants' control, negligence on the part of the masons' crew, or any of them, in building the staging, or in selecting safe putlogs out of the sufficient and suitable supply furnished by the defendants, was the negligence of a fellow servant of the plaintiff's intestate, for which the defendants are not responsible.

3.  The evidence clearly warranted the jury in finding that the masons did not undertake to build the staging, as a part of their employment, but that the defendants did undertake to furnish the staging for the use of the masons as a completed structure.

4.  The jury was amply justified in finding that the putlog was defective and unsafe, and that its appearance was such that the defect might have been discovered by the exercise of such reasonable care as was requisite on the part of the defendants, and of the servant who erected the staging for them, and for whose negligence they are responsible.

5.  Where the deceased was fifty-one years old, at the time of his death, was healthy, steady, industrious, temperate, of first class ability in the mason's trade, and he left a widow, also five children whose ages range from twelve to sixteen years, a verdict of five thousand dollars under the "death by wrongful act" statute, R. S., ch. 89, § 10, is not clearly excessive.

Motion and exceptions by defendant.   Overruled.

Action under chapter 124, Public Laws of 1891, brought by the plaintiff as administratrix of her late husband, Dennis D. McCarthy, to recover for personal injuries to him, received on August 18th, 1903, caused by the falling of a staging upon which he was engaged in laying brick on the walls of the Empire theater, located in Lewiston, and then in process of construction, and by reason of the falling of said staging, the plaintiff's intestate fell therefrom, a distance of about thirty-five feet, to the bottom of the building, receiving injuries which resulted in his immediate death.

The verdict was for the plaintiff for $5000.   The defendants filed the general motion for a new trial and also exceptions to certain rulings and instructions of the presiding justice.   At the argument in the law court the defendants waived their exceptions and the case was decided on the motion.

The case is sufficiently stated in the opinion.

*D. J. McGillicuddy and F. A. Morey,* for plaintiff.
*W. H. Newell and W. B. Skelton,* for defendants.

SITTING:  WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

SAVAGE, J.   The defendants, contractors, were engaged in constructing the Empire Theater building at Lewiston.   The walls of the building were of brick.   The plaintiff's intestate was a brick mason in the defendants' employ.   By reason of the breaking of a putlog in the staging upon which he was at work, the staging fell and he was precipitated to the ground, thirty-five feet below, and was killed.   Death was immediate.   This action is brought under chapter 124 of the laws of 1891, (R. S. 1903, ch. 89, §§ 9 and 10,) to recover compensation for the pecuniary injuries to his widow and children, resulting from such death.   The plaintiff recovered a verdict for five thousand dollars.

At the trial exceptions were taken by the defendants, but they have been waived.   The defendants also filed a motion for a new trial, upon the usual grounds, which has been argued.   The putlog

which broke was of oak, 3x4 inches in size and eight feet long. At the point where it broke off, which was not far from the center, there was a knot. The plaintiff contends that the appearance of the knot and the surrounding wood was such as to indicate upon reasonable examination that the putlog was weak and unsafe for use in such a staging as this was, that it was defective and that the defect was apparent. The defendants deny that there was anything in the appearance of the knot to indicate that the stick was unsound or unsafe, although it was demonstrated by the condition disclosed after the break that it was both unsound and unsafe. We deem it unnecessary to discuss the evidence in detail upon this point. We think it sufficient to say that in our judgment the jury was amply justified in finding that the putlog was defective and unsafe, and that its appearance was such that the defect might have been discovered by the exercise of such reasonable care as was requisite on the part of some one, before the putlog was put to use in the place where it was. And this conclusion is greatly strengthened by the fact that although the broken pieces of the putlog were in the possession of the defendants at the time of the trial, they refused, upon request, to produce them for the inspection of the jury. Such being the condition of the putlog, someone was negligent in putting it to use. It is not contended that the plaintiff's intestate was guilty of any contributory negligence.

The really disputable contention between the parties arises upon another point. The plaintiff contends that the defendants furnished the staging as a completed structure for the use of the brick-layers, and that therefore it was the duty of the defendants to use reasonable care to see that the staging in all its parts was reasonably safe for the use intended. And such, of course, would be their duty, if the plaintiff's contention is true in fact. On the other hand the defendants contend that they only undertook to furnish materials for the staging, sufficient in kind and suitable in character, and to furnish suitable men in the masons' crew to use them, and that they did do all that they undertook to do. And they contend further that the masons, of whom the plaintiff's intestate was one, within the scope of their employment, undertook to erect and did erect the staging for

themselves, out of the materials so furnished, using their own judgment and free from the defendants' control. And upon such a state of facts, the defendants claim, and properly, that if there was any negligence on the part of the masons' crew, or any of them, in building the staging, or in selecting safe putlogs out of the sufficient and suitable supply furnished by the defendants, it was the negligence of a fellow servant of the plaintiff's intestate, for which the defendants themselves are not responsible. And such is the law. *Donnelly* v. *Granite Co.*, 90 Maine, 110; *Amburg* v. *International Paper Co.*, 97 Maine, 327; *Kelley* v. *Norcross*, 121 Mass. 508; *Brady* v. *Norcross*, 172 Mass. 331.

The plaintiff claims that even upon the defendants' own theory, they have failed to show a full performance of duty, in that the men furnished were not all of them suitable in capacity and experience to make a proper selection of putlogs for the staging. This neglect is alleged in the writ. It is claimed that Maheau, a tender and one of the crew, who actually assisted in building the staging, and in putting in the putlog which broke, was inexperienced and incompetent for that service, and that the defendants had not used reasonable care to ascertain whether he was suitable or not. *Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 521; *Chapman* v. *Erie Railway Co.*, 55 N. Y. 579; *Indiana Mfg. Co.* v. *Millican*, 87 Ind. 88; *Blake* v. *M. C. R. R. Co.*, 70 Maine, 60. But we prefer to rest the discussion of the case upon the main proposition. We think the evidence warranted the jury in finding that the masons did not undertake to build the staging, as a part of their employment, but that the defendants did undertake to furnish the staging for the use of the masons as a completed structure. They must be judged by their several undertakings.

The defendants are contractors. For quite a number of years they have been engaged in contracting for and building theater buildings in various parts of the United States. Their headquarters are not in this state. One Shuttleworth, of Ottawa, Ontario, has been their superintendent of construction for four years, or one of their superintendents, if they had more than one. One Smith, for thirteen years, has been a foreman of brick construction for them. These two men

appear to have been more or less permanently attached to their working staff, in the several capacities stated. When they got ready to undertake the construction of the Empire Theater, the defendants sent Shuttleworth and Smith to Lewiston to take charge of the work, Shuttleworth as superintendent of the whole work, and Smith as foreman in charge of the brick construction. Shuttleworth purchased the materials and hired some men, but the masons were generally hired by Smith. All the help except Shuttleworth and Smith were local men, so far as appears. Smith worked more or less frequently, as he had opportunities, with the other masons laying brick. As to brick laying, at least, he was their fellow servant. So far there appears to be no serious controversy.

Now, as to their relations to the staging. Shuttleworth and Smith were both witnesses for the defendant, and upon their testimony chiefly we base our conclusion. Shuttleworth, qualifying as an expert on stage building, testified as to the various theaters, ·the building of which he had superintended for the defendants, and that in all those cases he had had charge of the construction of the masons' stagings. Even if that had been a part of his duty as superintendent elsewhere, it would not necessarily follow that such was his duty in this instance, though we think that if a concern were engaged in a single line of work, like building theaters, and employed a general superintendent for that work, year in and year out, though the work was in different places, it would be competent to show what his general duties were, as such superintendent, and that that would have some tendency to show what were his duties in a particular instance. But we do not rely upon this. Shuttleworth was asked in direct examination,— "So far as the general oversight of the masons' work and their staging and like that was concerned, under whose direction was that done?" and he answered,—"Under mine, and the head overseer, Mr. Smith. Mr. Smith received orders from me, and of course I never interfered with the masons at any time." At another time, he testified as follows:—

Q. Wasn't Smith the man that was building the stages in your concern all over the country?

A. Yes.

Q.  He had charge of that work all around, not only in Lewiston, but everywhere?

A.  Takes charge of the work where he takes charge of the brick work.

Q.  To build stages?

A.  To build staging also.

Q.  Does that for that concern of Claflin & Horne all over the country?

A.  Yes, sir.

Q.  He had charge of it here?

A.  Yes, sir.

After explaining that the practice on the job was that while the bricklayers continued laying brick at one place, generally, Smith and the tenders went ahead and built stagings for them to use elsewhere,—Shuttleworth was asked,—"So that the masons' crew didn't build their own staging, but it was built by Mr. Smith and these tenders he had?" and he answered, "Yes."

Smith testified that he was foreman of the masons' crew, and that his duties were to look after the masons and look after the scaffolding and lay brick if he had a chance.  He said he received his orders from Shuttleworth.  On his cross-examination the following appears:—

Q.  You and Mr. Shuttleworth work right along together on all these buildings wherever they go.

A.  Sometimes we are together and sometimes not.

Q.  These buildings that you have spoken of you were together?

A.  Yes, sir.

Q.  You have charge of the masons?

A.  Yes, sir.

Q.  And the building of the staging?

A.  Yes.

Q.  You have charge of the building of stagings, not only here but all over the country, wherever Mr. Horne and his company build?

A.  Yes, sir; the same as here.

Q.  For how many years have you had charge of that work?

A.   In the neighborhood of thirteen years.

Q.   You have charge of that work for Mr. Horne and his partner?

A.   Yes, sir.

Q.   You are the stage builder, not only here as I say, but all over the country?

A.   All over the country.

Q.   Wherever he builds, that is your business?

A.   That is my business, and mason with it of course.

Q.   I understand you do other work, but you do that work for them?

A.   Yes.

Q.   Absolutely and entirely?

A.   Yes.

Being asked if anyone else had anything to do with it he said "Mr. Shuttleworth is superintendent over me. He tells me what to do and I do it." He further said that the masons themselves on this job did not build the stages nor have anything to do with them, that the stage was all prepared for them before they went onto it, that all they had to do was to go on and go to work, that just as soon as they got through on one section, they had another stage all built for them, and that they simply moved up to it.

The inference legitimately to be drawn from this testimony is very strong that the defendants, for reasons of their own, furnished a man whose special duty to them was to build the masons' stagings and to build them their way. It was both convenient and economical for them to have the stagings erected in advance of their being needed by the bricklayers. Besides, it appears that in a building of this character, with very high side and end walls and no partition walls, it was prudent, if not necessary, that the whole system of stagings should be so built as to be a support or protection to the walls in case of wind storms or other exigencies. They may not have been willing to have so important a duty, and one fraught with such possible consequences to themselves, in the hands of an unknown and perhaps inexperienced crew to do as they pleased. These may have been the reasons why the defendants chose to keep the stage building

in the charge of their selected and experienced servant, Smith, supervised by his superior, the superintendent. At any rate, the evidence manifestly is sufficient to support a finding that they did do so.

It does not matter that Smith was foreman of the masons, that he laid bricks occasionally, or that he had other duties to perform. In the laying of brick, or in the performance of other duties he may have been fellow servant of the man who was killed. The foreman of a crew of men engaged in a common employment is, as to that employment, a fellow servant of each of the crew though he is their superior and has the right to direct their work. Smith may have been a fellow servant of the members of the masons' crew, in many respects. But if the defendants undertook to build the staging for the masons, and Smith, within the scope of his duty to the defendants did build it for them, then, in that respect, he represented the defendants, and if he was negligent his negligence was their negligence. And so of the negligence of a tender selected by him to assist him. Neither would, as to the staging, be a fellow servant of the masons who worked upon the staging. This court has said that "the test which determines the master's liability for the negligence of one employee whereby injury is caused to another, is the nature of the duty that is being performed by the negligent servant, at the time of the injury, and not the comparative grades of the two servants." *Small* v. *Manufacturing Co.*, 94 Maine, 551.

The verdict was for five thousand dollars. The deceased was fifty-one years old at the time of his death. He appears to have been a healthy, steady, industrious, temperate man, and of first class ability at his trade. He was earning at the rate of $3.25 a day, during the masons' season. He left a widow, age not given, and five children, whose ages range from twelve to sixteen years. It is the pecuniary injury to the widow and children which the verdict is to compensate. On the whole, we do not think the verdict is so large as to justify our interference, having due regard to the principles laid down in *McKay* v. *Dredging Co.*, 92 Maine, 454, and *Oakes* v. *Maine Central R. R. Co.*, 95 Maine, 103.

*Motion and exceptions overruled.*