HARRY DAY, ADMR. *vs.* CHARLES ISAACSON.

Androscoggin.    Opinion September 1, 1925.

*The verdict of a jury upon questions of fact is conclusive and final when the testimony is not so strong to the contrary as to clearly show error, or that the jury were influenced by prejudice, bias, passion or mistake.*

In the present case the evidence of negligence of defendant was sufficient to warrant the finding of the jury, and the verdict was not clearly, palpably wrong, hence must stand.

On motion for a new trial.    An action by the administrator of the estate of Myer Day to recover damages for injuries sustained by decedent through the alleged negligence of defendant's agent and servant, in operating the defendant's automobile in which decedent was riding as an invited passenger.    The general issue was pleaded and a verdict for $2,450.00 in favor of plaintiff was rendered and defendant filed a general motion.    Motion overruled.

The case is fully stated in the opinion.

*Benjamin L. Berman and Harris M. Isaacson*, for plaintiff.

*Hinckley & Hinckley*, for defendant.

SITTING:    WILSON, C. J., PHILBROOK, DUNN, STURGIS, BARNES, SPEAR, JJ.

BARNES, J.    Plaintiff's intestate died in a hospital, at Brunswick, about 12:30 in the afternoon of July 7, 1920.

He was a passenger in the automobile of the defendant on the night before, riding from Portland toward Bath, as the guest of defendant.    The course was over the so-called state highway, and as the car was about to enter Brunswick village, it left the macadam, ran for a distance on the gravelled or earthen margin of the northerly side of the street, struck and broke off a cedar telephone pole, said to have been eighteen or more inches through at its base, and thence ran across field or garden land, the left end of its forward axle upon

or in the ground, plowing a furrow in the sandy soil to a depth of from six to twelve iches and pushing "a lot of dirt right ahead of its radiator," till it stopped at a point sixty feet and four inches from the broken pole.

Myer Day, plaintiff's intestate, an unmarried boy about seventeen years and six months old, was sitting at the time of the accident on the floor of the rear part of the automobile, near the left door. He was conscious when raised from the ground, while in the house nearest the scene of the accident and for much of the time until he suffered death at the hospital, more than twelve hours after the accident.

The automobile was a five passenger Buick car, constructed to carry two on the front and three on the rear seat, owned by defendant and driven by him on the evening in question from Bath to Portland, and for a part of the return trip.

On the return trip defendant left Portland, at about ten o'clock at night, with Bennie Savage, then about twenty-six years of age, in the right front seat and a young woman seated between him and Savage.

On the rear seat were Mrs. Diana Isaacson, mother of defendant, Mrs. Sarah Savage, Bennie Savage's mother, and Mrs. Mamie Isaacson, while Doris Savage, a grown girl, and plaintiff's intestate sat in the laps of the occupants of the rear seat or upon the floor of the car.

Thus there were eight passengers in the car on the fatal journey.

A few minutes after starting from Portland defendant and Savage exchanged seats, and Savage drove the car for the rest of its journey, which ended with the collision some minutes before midnight.

The writ is dated April 15, 1924, and is brought to recover damages for the death of the young man, as provided by law.

There is practically no conflict in the testimony as to the facts so far recited, and there is no question that the car was a new one, in use for less than a week.

The defendant was presented as a witness by the plaintiff, and testified that on the Sunday before the accident, while driving this car from Berlin, N. H., to Lewiston, he had trouble with its steering gear and drove into a garage at Lewiston and "had it fixed up." In answer to a question as to how it happened that Savage drove for him to Brunswick, he testified, "Well, he asked me if he could drive. Said it was kind of dark and that I didn't know the road and asked me for the wheel and I let him have it."

Wm. B. Edwards, of Brunswick, then and now Chief of Police of that town, testified that after the accident defendant informed him that he cautioned Savage two or three times coming from Portland about driving too fast, or cautioned him not to drive too fast.

Another of plaintiff's witnesses, a Mr. Michaels, called by the plaintiff to the hospital within an hour of the accident, testified that he heard defendant state that he cautioned Savage about driving so fast; and that it seemed to him as if the car was going as fast as it could go when the accident occurred.

Another Isaacson, an attorney at the time, in Bath, accompanied Michaels to the hospital and, after testifying to the same effect as Michaels as to the car being at top speed, added that defendant, while they were that night inspecting the wrecked car, told him that Savage asked permission to drive the car, "telling him he would get him into Bath a great deal sooner than two hours."

The defendant's attorneys made use of but one witness, Mrs. Savage, one of the occupants of the rear seat. They also introduced a deposition given by Bennie Savage for use in litigation in New Hampshire, some time prior to hearing in this suit, and the deposition of Diana Isaacson taken for purposes of this trial.

Savage, in the deposition introduced, declared that he was not driving the car at a faster rate than twenty-five or thirty miles an hour, when it was stopped; but he also deposed that the automobile went only three or four feet after it struck and broke the telephone pole; and the two women were certain that the speed of the car was great, and certain of little or nothing else. In no respect did these witnesses assist the defense.

In the case as printed, and in their brief, counsel for the defense state that the action is a conspiracy to defraud the insurance carrier.

The witnesses for the plaintiff were the defendant, and relatives, friends and an attorney for the defendant, but the jury saw and heard the witnesses, and of the veracity of the witnesses and of the weight and probative force of the testimony the jury and not this court are the judges. It needs no citation of authorities upon this point.

The plaintiff recovers, if at all, because Savage did not exercise due care in driving the car just before the telephone pole was hit. The defendant, sitting at the driver's side, and cautioning him as to his rate of driving, made that driver his servant or agent, and, if

such driver did not exercise due care, his negligence is the negligence of defendant. Again citation of authorities is not requisite.

Our statute prescribes that in such a case as this the deceased is presumed to have been free from contributory negligence.

Was Savage driving at a rate of speed that is properly termed excessive, and that convicts defendant of negligence? The telephone pole, even if its core or heart was somewhat hollowed, sheared off, and the surface of the earth scarred for more than sixty feet, as the flying car was brought to a stop, convinced the jury that Savage was negligent.

It was probably unavoidable that the jury were informed that defendant was insured against loss on account of such damages as are demanded. But it must be assumed they were properly instructed in the premises, for no special instructions were requested and no exceptions were taken to such as were given, and without controlling proof that the jury were influenced by bias or prejudice, this court will not interfere with their finding. New trial is sought, counsel urging that the verdict is against the evidence and the weight of the evidence, and that the damages are excessive.

It cannot be had, for such a case as this is peculiarly within the province of a jury, and because the court cannot say that $2,450 is an excessive amount, under the circumstances detailed in this case.

Entry will be,

> *Motion overruled.*
> *Judgment on the verdict.*