FRED W. BOWLEY, ADMINISTRATOR OF THE
ESTATE OF RALPH W. BOWLEY

*vs.*

LAWRENCE SMITH.

York.     Opinion, December 30, 1932.

*Willard and Willard,* for plaintiff.
*Skillin, Dyer and Payson,* for defendant.

SITTING : PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

BARNES, J. This action is brought by the administrator of a traveller who was killed on a highway in Gorham, for the benefit of a widow and heir-at-law as provided by statute.

The traveller, driving a coupe in an easterly direction, just before midnight, on a September day, meeting a truck loaded with telephone poles, drove so that the forward end of one of the poles hit the left upright of the automobile, a sliver from the pole shattered the windshield of the automobile, striking the head of the driver and killing him instantly.

The defendant pleaded the general issue and contributory negligence on the part of the deceased.

Verdict was for the plaintiff in the sum of five thousand dollars.

Before this Court on motion for new trial, defendant relies on lack of evidence of negligence on his part, contributory negligence, and that the damages are excessive.

It is admitted that the truck in collision was the property of defendant, operated by his servant, in the business of defendant.

The road at the place of the accident was for a long distance in either direction, straight, practically level, from fifteen and six-tenths feet to nineteen and seven-tenths feet wide at points measured, an "old tarvia" road, with gravel shoulders flush with the tarvia, and unlighted except by the headlights of the vehicles in collision. The width of the tarvia surface as measured nearest the point of collision was sixteen and one-half feet.

The night was "dark but clear." The only witnesses who saw the collision were defendant's driver and a young man seated with the driver at the time of contact.

The truck was moving westerly ; the automobile toward the east.

Fragments of broken glass were observed that night toward the southerly margin of the tarvia of the roadway, and what were accepted as wheel tracks of the automobile ran easterly along such

southerly margin to a point one hundred twenty-five feet easterly of the first deposit of shattered glass, and thence on a sweeping curve across the road and to the point in the field north of the road where the car overturned and stopped.

There is no evidence of the speed at which plaintiff's intestate was driving when he collided with the truck other than an estimate of the passenger in the truck cab that as he saw it coming toward him, when only its lights were visible, it seemed to him to be moving at the speed of fifty miles or greater.

The automobile was properly lighted, and the assertion that its driver was guilty of contributory negligence because not at the right of the middle line of the way, at the time of collision (a fact to be found by the jury), may be dismissed as not proven, there being evidence on which a jury might properly find that the collision occurred on some portion of the road south of its middle line.

In the record there is conflicting evidence as to negligence of defendant's servant, the truck driver.

His work that night was to convey a load of logs, known as telephone poles, each thirty-five feet long, from Yarmouth, Maine, to Ashland, Mass.

The means of conveyance furnished him was a Chevrolet truck, with cab, but without body, to which, in the rear, was attached, by a pole about twenty feet long, a trailer, of two wheels.

Above the rear axle of the truck was secured a bunk six feet, six and a half incles in length, and a similar bunk was fastened to the axle of the trailer.

At Yarmouth, with some assistance, the driver loaded this conveyance, as he testified, by placing poles, the heavier or butt ends forward, on the ends of the forward bunk, so that the ends of the poles came within two feet of the cab, and binding them to the forward bunk. Three more poles were laid on the bunks; then a second tier of four poles, and a third of three poles. This load he said he bound with chains.

With this load he said he was driving on his right hand side of the road, with left wheels, "about in the center of the road when I saw him coming."

The only witness to the collision, the truck driver, and the passenger at his side testified that the driver of the automobile ap-

proached them on the same side of the road as the truck; that the truck driver swung the truck to the very margin of the tarvia, on his right; that the automobile was turned to its right, cleared the head of the truck but collided with it before getting by.

The truck driver testified that he was slowing down as the automobile approached and that he stopped within the length of his load of the point of contact. The young men left the·truck, and finding it impossible to right the automobile, lying in the field, secured the assistance of two men living near and travellers who stopped at the scene, and when the automobile was being righted up the driver was found unconscious within it, his head severely bruised, and a large sliver of wood as from a log, perhaps eight inches wide at its larger end upon or with the body.

Two residents of Westbrook, following plaintiff's intestate, some minutes later, saw the truck standing, lighted, on the roadway, and as they cleared it saw an object protruding two feet or so from the left forward portion of the load, and observers, there, who were witnesses saw that such a sliver had been torn from what they term the butt and forward end of the left log of the load of poles.

The driver testified that all the poles were straight, others that the slivered pole had a crooked butt and that this projected beyond the line of wheels of the truck.

Mr. Samuel Porello, of Westbrook, said: "As I approached the lights; as I went below the lights I had to turn to my right sharp in order to avoid hitting a post sticking out."

Mr. Vallee, riding with Porello, testified; "We drove in the middle of the road, but when we saw this car Sam went over on the side, and as we got by . . . as we approached these lights we looked up and saw this projection. It looked like a log . . . he swerved his car a little bit to one side . . . we went by."

Mr. Vallee further testified that later he went back and looked the truck over. He said, "Of course I looked the first thing for the place where this piece had been taken out, and this log seemed to be — I should say it was laid this way, across the road, so that it projected over about two to two and one-half feet beyond the cab, the side of the cab."

Mr. Anderson, of the state highway police, who arrived at the scene just after the automobile was righted up, testified that the outside log on the left side of the truck was twelve to fourteen

inches in diameter at the forward end; that from it a sliver had been taken off, that it was straight, but "might have flanged a little at the very butt end," and that it lay straight in the load. Mr. Anderson testified that the broken glass seen by him most westerly on the roadway was "about where the rear wheels of the truck were, . . . very near the center" of the road.

The testimony can not be reconciled, but after consideration of all the evidence a jury might properly find that defendant's load had shifted after being loaded, with the result that a log projected into the road so as to be dangerous to other travellers, and that it was negligence on the part of defendant's servant not to know of the dangerous situation and correct it.

The evidence was sufficient to warrant the jury finding of liability on the part of defendant.

The amount of damages shall be what the jury "deem a fair and just compensation, not exceeding five thousand dollars, with reference to the pecuniary injuries resulting from such death to the persons for whose benefit such action is brought."

R. S., Chap. 101, Sections 9 and 10.

In such cases an important factor in determining the amount which may properly be awarded is the earning capacity of the deceased. *Welch* v. *M. C. R. R. Co.*, 86 Me., 570, 30 A., 116; *McKay* v. *New England Dredging Company*, 92 Me., 454, 43 A., 29.

Age, health, occupation, means, habits, capacity, education, temperament and character are all pertinent to show probable pecuniary usefulness of the deceased.

*Oakes* v. *M. C. R. R. Co.*, 95 Me., 103, 49 A., 418.

In the case at bar evidence bearing on this important issue was not sufficient to form any basis for rational computation. It is obvious that such damage is not susceptible of exact computation and that much must be left to the discretionary judgment of the jury.

But there must be some definite evidence upon which to base that judgment.

The case should be remanded to the lower court for hearing in damages only.

To that extent

*Motion sustained.*