WALTER D. ROBINSON, *Adm'r v.* WILLIAM O. DIXON *& a.*

*Hughes & Burns* and *Walter A. Calderwood, Jr.* (*Mr. Calderwood* orally), for the plaintiff.

*Sewall, Varney & Hartnett,* and *Henry M. Fuller* (*Mr. Fuller* orally), for the defendants.

WOODBURY, J. The parties are all residents of this state and so was the decedent, but the automobile accident in which the latter was fatally injured occurred in Maine. Without objection or exception this action was tried under the death statute of that state. Maine Revised Statutes, (1930), *c.* 101, *ss.* 9, 10, as amended by Maine Acts and Resolves 1933, *c.* 113. Under the circumstances disclosed the submission to the jury of both the issue of liability and that of damages under the statute of Maine cited above was proper. *Hill v. Railroad,* 77 N. H. 151; *Marshall v. Railroad,* 81 N. H. 548; Am. Law Inst., Restatement of Conflict of Laws, *ss.* 391, 392, 412, 417.

The question presented is whether the law of Maine should also be applied in determining the issues raised by the defendants' motion to set the verdict aside on the ground that it is excessive.

In this state we do not give foreign law extra-territorial effect. "We enforce the foreign law because it is our law that the foreign law shall govern the transactions in question," (*Gray* v. *Gray*, 87 N. H. 82, 87), and the basis of our law is the principle of comity. *Crippen* v. *Laighton*, 69 N. H. 540, 552, 553; *Ghilain* v. *Couture*, 84 N. H. 48; *Precourt* v. *Driscoll*, 85 N. H. 280. As this principle of comity has been applied by this court over the years, certain rules governing its scope have crystallized. In general it may be stated that while under appropriate circumstances we may apply the substantive law of another state to questions of fact in litigation here, we do not apply the procedural law of any state but our own. The question of what law to apply is not, however, always answered by simply determining the nature as substantive or adjective of the particular rule of law involved. This is for the reason that we do not here enforce foreign substantive law if it is penal in character (*Hill* v. *Railroad*, 77 N. H. 151), or if it contravenes our public policy (*Saloshin* v. *Houle*, 85 N. H. 126), while we do enforce foreign adjective law "when the foreign remedy is so inseparable from the cause of action that it must be enforced to preserve the integrity and character of the cause and when such remedy is practically available." *Precourt* v. *Driscoll*, 85 N. H. 280, 283.

The question of whether the law to be applied in ruling upon the defendants' motion in the case at bar is substantive or adjective, and the further question, if it belongs in the latter category, of whether or not it is so much a part of the cause of action, which is admittedly governed by the law of Maine, that justice and equity require that the law of that state be resorted to upon this phase of the case also, is one of both novelty and difficulty. However, we do not need to consider it because under either the law of Maine or of this state the ruling of the court below must stand.

Section ten of the Maine statute of 1930, cited earlier in this opinion, which is a reënactment of earlier similar statutes on the subject, provides that "The jury may give such damages as they shall deem a fair and just compensation, not exceeding five thousand dollars, with reference to the pecuniary injuries resulting from such death to the persons for whose benefit such action is brought." The amendment to this statute of 1933, also cited above, changes the limit to the amount recoverable from five to ten thousand dollars.

Interpreting this statute the Maine court has held that under it there may be no recovery of punitive damages (*Oakes* v. *Railroad*, 95 Me. 103), or for the pain and suffering of the decedent (*McCarthy* v. *Claflin*, 99 Me. 290), that there can be no recovery of damages "for any grief, distress of mind, loss of companionship or society, or injury to the affections suffered by the beneficiaries," (*Graffam* v. *Saco Grange &c.*, 112 Me. 508), and that there can be no recovery of funeral expenses. *Williams* v. *Hoyt*, 117 Me. 61. What is held by the Maine court to be recoverable under this statute is "the present worth of the future pecuniary benefits of which the beneficiary has been deprived by the wrongful act, neglect, or default of the defendant." *Oakes* v. *Railroad, supra.*

The rule for assessing damages under the statute was stated by the Maine court in 1899 in the case of *McKay* v. *Company*, 92 Me. 454, in the following language which was cited and quoted with approval by that court in 1917 in the case of *Williams* v. *Hoyt*, 117 Me. 61. "The injury occasioned by such death must be wholly to the beneficiaries named in the statute, and the damages to be recovered for such injury are limited to the pecuniary effect of the death upon them. It is not essential to the right of the beneficiaries to recover damages for such death, that they should have had any legal claim against or upon the deceased. Whenever there exists a reasonable probability of pecuniary benefit to one from the continuing life of another, however arising, the untimely extinction of that life is a pecuniary injury. In estimating the amount which shall be the 'fair and just compensation' for such injury provided by the statute, the various circumstances of the beneficiaries and the deceased and the relations between them are to be ascertained; the certainties, probabilities and even possibilities of the future are to be considered; and from these data the amount of the compensation is to be estimated by a careful calculation of what would have been reasonably probable pecuniary benefit to the survivor from the continued life of the deceased."

In the *McKay* case it is further said: "The age, capacity, health, means, occupation, temperament, habits and disposition of the deceased and of the beneficiaries are material to be known." And, in the case of *Oakes* v. *Railroad*, 95 Me. 103, 104, it is said that "The earning capacity of the deceased was an important consideration, and this necessarily included not only her physical ability to labor, but the probabilities of her being able to obtain profitable employment."

The Maine court recognizes that "The damages in this class of

cases can never be the subject of precise mathematical demonstration or calculation," since "They are based upon the probabilities of the future which can only be shown by the facts of the past," (*Oakes* v. *Railroad, supra*), but it also recognizes that "There is some probability that these various circumstances shown to be existing at the time of the death would have been continued in more or less degree had not the death occurred." These circumstances are said to "be subject however, to acceleration, retardation, interruption and even extinction by other circumstances which may possibly, or probably, or even surely occur after the death. These inevitable, probable, and even possible subsequent circumstances are therefore to be looked for and considered." *McKay* v. *Company*, 92 Me. 454, 459. Furthermore it is held that the assessments of damages in these cases is "At best . . . entirely a matter of conjecture" (*Williams* v. *Hoyt*, 117 Me. 61, 63), and that the problem presented is one "peculiarly within the province of a jury." *Day* v. *Isaacson*, 124 Me. 407, 410.

This does not mean, however, that the Maine court declines to exercise any supervisory power over the amount of verdicts returned in death cases. It will not exercise its power "without controlling proof that the jury were influenced by bias or prejudice" (*Day* v. *Isaacson, supra*), but when such proof exists, the court does not refrain from action. The nature and extent of its supervisory powers are stated in the case of *Conley* v. *Railroad*, 95 Me. 149, 154, as follows: "While it is not our province to assess damages, or to fix what is 'reasonable and just compensation' for the pecuniary injury, we may express the extreme limit beyond which a verdict should be deemed clearly wrong."

This authority to set the upper limit to verdicts returned in cases of this sort has been repeatedly exercised by the Maine Court. In the *McKay* case, cited above, the court set aside a verdict of two thousand dollars and put the reasonable upper limit of recovery at seven hundred and fifty dollars. The decedent in that case was an unmarried man of twenty-three, employed irregularly as a laborer, sometimes at two dollars a day and sometimes at fifteen cents per hour, whose living costs were twenty dollars per month. It appeared that from time to time in the past he had sent small sums home to his parents, who were the beneficiaries, both of whom were poor and in ill health. There were younger sons in the family. In arriving at its decision the court considered the life expectancy of the parents, the amounts of money and the services contributed to them in the

past by the decedent, the prospects of future contributions, and the cost of an annuity to provide for them for their lives an equivalent in money for the decedent's contributions of both money and services.

In *Oakes* v. *Railroad*, also cited above, the court permitted no greater recovery than two thousand five hundred dollars (the verdict returned was for three thousand five hundred) by the sick husband and five year old son of the decedent, a woman of thirty-five irregularly employed as a milliner, who was described as of good health, prudent, industrious, a good mother and possessed of a "fair education." Her earnings, however, were not great and she was without employment at the time of her death.

*Conley* v. *Railroad*, 95 Me. 149, was an action for the death of a seventy-three year old laboring man also irregularly employed. The court, adverting to the fact due to his age the decedent's future earnings would surely decrease while the expenses of his living would with equal certainty increase, ordered a new trial unless the plaintiff would remit all the verdict in excess of seven hundred and fifty dollars. The original verdict was for sixteen hundred dollars.

In *McCarthy* v. *Claflin*, 99 Me. 290, a verdict of five thousand dollars for the death of a skillful, temperate and industrious mason, aged fifty-one, and fully employed during the mason's season at three dollars and a quarter per day was allowed to stand. The beneficiaries were the widow and five minor children.

In *Curran* v. *Railway*, 112 Me. 96, the court found a verdict of eighteen hundred and eleven dollars for the death of an eight year old girl excessive and set the limit of recovery at five hundred dollars. The court assigned as the principal reasons for its action that the child was of such tender years that its character could not be ascertained and that for several years it was sure to be a pecuniary burden rather than benefit to its parents.

*Graffam* v. *Saco Grange &c.*, 112 Me. 508, was also an action for the death of a minor, a boy eleven and a half years old. The court, mentioning only the second reason assigned for its action in the preceding case, ordered a verdict for the plaintiff reduced from eighteen hundred and seventy-three dollars and thirty-three cents to one thousand dollars.

In *Williams* v. *Hoyt*, 117 Me. 61, another action for the death of a minor, the court, after recapitulating the rules for the assessment of damages in death cases, said: "We feel that the pecuniary loss to the parent under the rules above given, for a boy of this kind, sixteen years of age, should be fifteen hundred dollars."

A verdict for twenty-four hundred and fifty dollars for the death of a boy seventeen and a half years old was allowed to stand in the case of *Day* v. *Isaacson*, 124 Me. 407.

Two later cases, *Bowley* v. *Smith*, 131 Me. 402, and *Carrier* v. *Bornstein*, 136 Me. 1, were remanded on the ground that the evidence adduced by the plaintiff was insufficient to provide any basis for the assessment of damages.

In view of the decrease in the purchasing power of money, a fact which the Maine court takes into consideration in its use of precedents upon the issue raised by motions of the sort here under consideration (*Vallely* v. *Scott*, 126 Me. 597), and in view of the fact that all of the cases, except the last one, cited above, were decided before the limit of allowable recovery was raised from five to ten thousand dollars by the amendment of 1933, we do not believe that the cases cited warrant the conclusion that under the law of Maine the verdict returned in the case at bar is excessive.

The decedent in the case before us was a young woman of twenty-one who at the time of her death resided at home with her parents but was employed as a waitress in a restaurant. She left high school before completing her full course there in order to assist her mother, whose health was not good, and since leaving school she had either worked for wages or worked at home doing all but the heaviest house work. When working for wages she contributed a substantial part of her earnings to her parents, at the time of her death she was giving them six or seven dollars per week, and it appeared that she could have had employment at any time she wished either as a waitress or as a clerk in a retail department store. At the time of the decedent's death her mother was fifty-seven or eight years old, her father, who is a retired civil employee of the Portsmouth navy yard, living on a pension, was sixty-one years old.

The evidence discloses that the decedent was a bright, active, healthy girl, with a pleasant disposition and attractive personality, and that she was ambitious and preparing to train herself for work of a secretarial nature which would offer larger pay. Her habits and character were described as exceptionally good, and she was said to be intelligent, industrious, frugal and honest.

It could be found that in the past she had been both willing and able to contribute to her parents either six or seven dollars per week or her services around the house of findably equal value. Considering the mother's life expectancy of sixteen years, the sum which she might expect from the decedent over that time would in round figures

be from five thousand to fifty-eight hundred dollars. While the present value of these sums would be somewhat less, the decedent was of an age when her earning capacity would naturally be likely to increase, and it could be found that in the future she would obtain more profitable employment.

Counsel for the defendants advance the argument that in view of the decedent's attractive qualities it is probable that she would soon marry and, if she did, would be likely to discontinue her contributions to the beneficiaries. Counsel for the plaintiff, to counteract the force of this suggestion, point to the evidence in the record to the effect that in the past the decedent had shown no interest in the opposite sex. The court of Maine indulges in no presumptions and ventures no predictions with regard to this matter. It merely says that "Probabilities of marriage, sickness, personal responsibilities and the vicissitudes of life must all be considered." *Williams* v. *Hoyt,* 117 Me. 61. We must assume that the jury did so in arriving at their verdict, and if they concluded that the decedent would probably not marry but would continue her contributions to her parents, we cannot say that they were clearly wrong.

Neither is it of any consequence that the beneficiaries were self-supporting without the decedent's aid or that they had no legal claim upon her. *McKay* v. *Company,* 92 Me. 454, 459.

Upon consideration of the law of Maine and the instances of its application by the court of that state, we are of the opinion that the verdict returned in the case at bar would not be regarded in that jurisdiction as excessive.

*A fortiori* under our law which permits less judicial regulation of jury verdicts than does the law of Maine (*Wisutskie* v. *Malouin,* 88 N. H. 242), the ruling of the court below upon the defendant's motion must be allowed to stand.

*Judgment on the verdict.*

ALLEN, C. J., concurs in the result, but is of the opinion that the question should be decided solely as one of local procedure: the others concurred.