Otis Lee Roady, Administrator of Estate of Willard Lee Roady, Deceased et al., Appellants, v. Otis Rhodes, Appellee.

Gen. No. 9,455.

Heard in this court at the May term, 1945. Opinion filed May 28, 1945. Released for publication June 23, 1945.

THOMAS S. MACKINLAY, of Chicago, for appellants.

HERSHEY & BLISS, of Taylorville, and LESTER K. VANDEVER, of Hillsboro, for appellee.

Mr. Presiding Justice Riess delivered the opinion of the court.

Plaintiffs have appealed from a judgment in favor of the defendant and against the plaintiffs in bar of suit which was entered upon verdicts of a jury in an action at law in tort seeking recovery of alleged damages arising out of an automobile collision between a Chevrolet coach driven and occupied by three of the plaintiffs and the plaintiff's intestate and a Ford truck driven by the defendant, Otis Rhodes, along an 18 foot "black top" public highway about four and one-half miles south of Nokomis, Illinois, in which plaintiff's intestate, Willard Lee Roady, met his death and George Andrew Roady, Otis Franklin Roady and Melvin Groves Roady, all brothers and coplaintiffs, sustained serious bodily injuries.

Plaintiffs appellants have assigned prejudicial and reversible error by the court (1) in denying plaintiffs' motion for a new trial because the verdicts were contrary to the manifest weight of the evidence; (2) in giving erroneous instructions on behalf of the defendant (a) concerning the duty of a passenger in a vehicle to give warning of approaching danger to the driver (b) on the degree of care required in an emergency resulting in imminent peril and (c) in giving several instructions concluding with a direction to find the defendant not guilty.

Briefly recited, the evidence tended to show that on the evening of January 22, 1943, the intestate deceased, Willard Lee Roady, aged 21 years; George Andrew Roady, aged 18 years; Otis Franklin Roady, aged 16 years and Melvin Groves Roady, aged 15 years drove from their home upon a farm in Montgomery county to Nokomis, Illinois, in an old Chevrolet coach recently acquired by Willard Lee Roady where they called at the home of one Haggerty and also procured keys for temporary repairs to the rear axle of the car and after a visit with the Haggerty family,

started home in their car at about 10 o'clock p. m., along a ''black top'' highway of unmarked center having a width of about 18 feet, with dirt and grass shoulders of 3 to 7 feet width on each side, beyond which were located shallow ditches; that there was considerable fog at various points along the highway which materially interfered with their vision; that while proceeding along the highway in a southerly direction at an estimated speed of 20 miles per hour, there suddenly loomed up in the fog ahead of them the defendant's Ford truck. Two of the plaintiffs, George Andrew Roady and Otis Franklin Roady testified that their car was driven along about a foot or two from the right edge of the ''black top'' paving portion of the highway; that George Roady was the driver of the car and that Otis Roady sat in the front seat and watched out of the side window to see that the car kept to the right of the highway; that at a distance of about 60 feet, they saw the lights of an approaching vehicle and that George Andrew Roady slowed the car and turned to the right edge of the paved highway; that the Ford truck, which was proceeding northward, turned across the highway and struck the left front fender of plaintiffs' car which was knocked or driven to the right side of the highway with the left front wheel of defendant's truck resting upon the fender or rear part of the engine block of plaintiffs' car; that plaintiffs' car then faced west and defendant's truck in a northwesterly direction where they remained and were seen by several officers and witnesses following the collision and resultant injuries to the plaintiffs. Defendant Rhodes testified that he had been trucking lime and loads of corn between farms and points in the neighborhood during the day and was proceeding homeward followed at some distance by two other farm trucks of that neighborhood; that there was fog along the highway and defendant had attached fog lights to his front axle, one of which

lights pointed to the right edge of the pavement and the other one downward in direction immediately ahead and that four bulb lights were burning at the top of the truck. These bulb lights had been seen by plaintiffs in their approaching car. Defendant Rhodes testified that as he was proceeding along the right side of the center of the unmarked black top highway, there suddenly loomed up in front of him plaintiffs' automobile at a distance of about 30 feet away and that the greater portion of plaintiffs' car was to the left or wrong side of the highway and that to avoid a head-on collision, if possible, defendant suddenly veered his truck to the left or northwesterly direction to avoid the collision; that thereupon plaintiffs also turned their car in a westerly direction and caused the collision complained of in which defendant testified that the left front ends of the two cars had come together and following the impact were left standing upon the left side of the highway where plaintiffs' car was headed westward and defendant's truck of an over-all length of about 22 feet was facing northwestward with its rear end partly across the center line of the highway. There were no other occurrence witnesses. Willard Lee Roady became unconscious and later died from the injuries. One of the brothers who was in the rear seat of the Roady car was asleep when the collision occurred. No warning appears to have been given by occupants of the car to the driver. There was evidence of one witness of fine broken glass near the center of the highway and of broken windows on the Roady car. Other witnesses who came upon the scene after the occurrence testified in substance to the location of the damaged cars, as above indicated. Two witnesses testified that they were able to drive northward on the right side of the road which was free of interference by the wrecked cars.

The secondhand Roady car recently acquired at a cost of $40 was being driven without a State license

and its right wheel and axle had slid loose between 15 and 25 times on the road into Nokomis and it had a leaky radiator. The car's condition required frequent stops to temporarily push the axle back in place while proceeding. The keys were placed at the end of the axle to prevent it from sliding off on the road home. At one point, a Mr. Meyer gave some assistance to plaintiffs and advised them not to make the trip into town but they proceeded notwithstanding the condition of the car and foggy weather. They delivered a butchered hog at Haggerty's and stated that they desired to get a certificate of title and apply for a license in Nokomis but did not do so while there. Some of these facts are not relevant to the issues of negligence at and immediately before the time of the collision.

Upon the question of plaintiffs' contention that the verdicts and judgment were contrary to the manifest weight of the evidence, it may be said that at the time of the collision, there was fog along the highway which materially interfered with the vision of both drivers and occupants of the cars; that immediately before the collision when the vehicles became visible to the respective drivers, both drivers veered their cars toward the westerly side of the highway; each apparently seeking to thereby avoid a collision in the emergency that suddenly confronted them. Defendant's car did not proceed toward the right but turned to the left in an effort to avoid the collision. The testimony of plaintiffs was somewhat confused and evidently unconvincing to the jury in some material aspects.

The state of the record is such that it became necessary that the jury be accurately instructed as to the law and while we cannot say from the evidence alone that this court should substitute its judgment upon the weight and probative value of the testimony for that of the jury and trial court which saw and heard

the witnesses testify, we have examined the instructions complained of and believe that, when considered in the light of the particular facts presented by the record, no substantial nor prejudicial error appears in the two instructions complained of. It is a principle of law well recognized in this State that the driver of a vehicle who is faced in a sudden emergency with imminent peril is not required to use the same degree of self-possession, coolness and judgment as when there is no imminent peril. He is only required to act as an ordinarily prudent person would act under similar circumstances. From the testimony of the defendant upon which he is entitled to have an instruction setting forth the applicable rule of law in his behalf, the principle involved in the above instruction was applicable under the sudden emergency and imminent peril which arose. Whether the conduct of the defendant at the time in seeking to avoid a collision was that of an ordinarily prudent person similarly situated became peculiarly a question of fact for the jury, and this court cannot, as a matter of law, hold that the defendant was guilty of negligence or failure to exercise that degree of ordinary care which the circumstances required. No excessive number of instructions were given by the court on any of the issues.

Upon a former jury trial wherein the representative of the plaintiff's intestate and the coplaintiff Otis Franklin Roady tried the case after a voluntary nonsuit had been entered as to the coplaintiffs George Andrew Roady and Melvin Groves Roady, a mistrial resulted following a "hung jury." By consent of the parties, the additional plaintiffs were added, followed by a jury trial and separate verdicts against each of the four plaintiffs under the four counts of the amended complaint. A case very similar upon the facts to the case at bar in which the judgment of the trial court was affirmed by this court is that of *Bunch v. McAllister*, 266 Ill. App. 248.

Objections concerning other matters referred to in the motion are neither argued nor referred to in appellants' brief and argument before this court.

We find no prejudicial nor reversible error in the record and the judgment of the circuit court of Montgomery county is affirmed.

*Judgment affirmed.*