Raymond Nystrom, Plaintiff-Appellee, v. Al Bub, Mary L. Bub and Edwin J. Faull, Defendants-Appellants.

Gen. No. 11,532.

Second District, Second Division.

May 16, 1962.

Rehearing denied August 20, 1962.

Moran, Klockau, McCarthy, Schubert & Henss, of Rock Island (Frank G. Schubert of counsel), for appellants.

Don J. McRae, Andrews & Andrews, of Kewanee, for appellee.

CROW, J.

This action was brought under the statute commonly referred to as the Dram Shop Act: Ch 43 Ill Rev Stats, 1959, par 135. Count I of the complaint was

for alleged injuries to the person of the plaintiff, Raymond Nystrom, as a result of a collision between Nystrom's automobile and one driven by an allegedly intoxicated person, Clifford E. Burroughs. Count II was on behalf of Nystrom's wife and minor children for alleged loss of means of support incurred as a result of the injuries sustained by Raymond Nystrom. The Jury returned verdicts of guilty against the defendant tavern operators Al and Mary Bub, as well as against the defendant property owner, Edwin J. Faull. The Court entered judgments against these defendants on the verdicts for $6000 on Count I and $9000.00 on Count II. Subsequently the Court denied the defendants' post-trial motions for judgment notwithstanding the verdicts and for new trial, and this appeal by the defendants results.

The defendants ask that the judgments be reversed, because as a matter of law there was no competent evidence to establish the intoxication of Clifford E. Burroughs, or the cause be reversed and remanded for a new trial for the following reasons, claiming the Court erred—

1. In refusing to admit the defendants' expert testimony pertaining to the effect of alcohol upon the human body, the various percentages of blood alcohol at which human senses tend to become affected, the elimination rate of alcohol, and the effect on a hypothetical person of three 12-ounce bottles of beer in a one-hour period and the percentage of alcohol remaining in such hypothetical person after a two hour period of oxidation and elimination.

2. In permitting improper use for ostensible impeachment purposes of the defendants' Answers to Interrogatories propounded by the plaintiff, when such were not impeaching and

then failing to give the defendants opportunity to explain such.

3. In admitting the opinion testimony of two wit-, nesses regarding the intoxication of Burroughs, when no proper foundation was laid and both were incompetent to express such an opinion.
4. In refusing to admit the defendants' Exhibit 2 which was the plaintiff's common law complaint against Burroughs in a separate suit and containing the admission that Burroughs was overcome by sleep and continued to drive his auto.
5. In sustaining the plaintiff's objection to the circumstantial evidence attempted to be introduced by Burroughs and his mother, to the effect that he had less than $1 on his person on the day in question, with which he could purchase any alcoholic liquor.

It is the plaintiff's theory that there was ample competent evidence to establish the intoxication of Clifford E. Burroughs at the time the car driven by him struck the car driven by the plaintiff, Raymond Nystrom, including Burroughs' drinking and conduct at the tavern of the defendants, Al Bub and Mary L. Bub, and afterward his operation of his auto immediately prior to the collision, and the opinions of witnesses who observed him immediately after the collision that he was intoxicated, and that the alleged errors in the admission of evidence, and the refusal to admit certain other evidence are not well-founded.

The Complaint, Count I, alleged, in substance, so far as material, that on or about June 25, 1959, the defendants, Al Bub and Mary L. Bub, by themselves, their agents or servants, sold or gave to one Clifford E. Burroughs in their tavern or dram shop alcoholic liquor, which caused, in whole or in part, the intoxication of Clifford E. Burroughs; while so intoxicated as

a result of the consumption of such alcoholic liquors Clifford E. Burroughs drove an automobile in a drunken and intoxicated manner in a northerly direction along a certain public road or highway known as the Andover-Woodhull blacktop, running generally in a northerly and southerly direction between the Villages of Woodhull and Andover in Henry County, and more particularly at a point approximately four and one-half miles north of the Village of Woodhull at a place where it passes the premises occupied by Vincent Danielson, the road then and there running in a northerly and southerly direction; at that time and place his automobile was being driven by Clifford E. Burroughs in a northerly direction at approximately 11:55 p. m.; at that time and place the plaintiff was driving his automobile in a southerly direction on the Andover-Woodhull blacktop and on the right or westerly half of the roadway; Clifford E. Burroughs then and there drove his automobile across the center of the road and onto the west side thereof so that it first collided with another automobile being operated by Edward Barton in a southerly direction immediately, but at a safe distance, ahead of the plaintiff, and then Burroughs collided with the automobile operated by the plaintiff, so that it (the plaintiff's car) crashed into the westerly ditch or embankment of the roadway, overturned, and caught fire, and the plaintiff sustained divers serious injuries; and as a result of the intoxication of Clifford E. Burroughs and in consequence thereof and as a direct and proximate result of the collision, the plaintiff, Raymond Nystrom, sustained serious and permanent injuries. Count II alleges in substance the same things and in addition the facts particularly pertinent to the alleged loss of means of support by the plaintiff's wife and children. The defendants' answer denied the essential allegations of the complaint.

At about midnight on June 25, 1959, the plaintiff was driving in a southerly direction on the blacktop road

339

between Andover and Woodhull, at about 50 m.p.h., behind another car driven by Mrs. Edward Barton. The road is 21 feet wide. Clifford Burroughs was driving northerly on the same road. In front of the Vincent Danielson farm Mrs. Barton saw Burroughs' car come directly at her in the southbound lane, he did not appear to put on his brakes, she dimmed her lights and Burroughs dimmed his lights, and finally he sideswiped her car whose right wheels were in the west ditch at the time of impact. Her car swung into the ditch. Burroughs' car continued north in the southbound lane until colliding headon with the plaintiff's car. The plaintiff's car came to rest on the west shoulder and caught fire. The Burroughs' car was about 310 feet north of the Barton car afterwards. The weather was hot and clear. The pavement was dry and visibility good. Burroughs' car left no skid or tire marks before striking the plaintiff's car. The plaintiff had severe injuries, which need not be detailed under the circumstances.

State Police Trooper Robertson, who was at the scene of the accident, stated that, when he arrived at the scene, he observed the plaintiff's car burning on the shoulder of the road. He talked to the plaintiff, who was sitting on the bank in front of the Danielson farm, and the plaintiff said that his leg was broken. He then went up to Burroughs who "seemed semiconscious" and it seemed did not understand what was going on. He was bleeding about his face and head and the officer was unable to get any conversation from him. It was apparent from the wreckage plus the injury to Burroughs, that the latter was unable to carry on any conversation. A rubber blanket was brought from the Police Squad car and Burroughs was put in its because he was in shock. Robinson smelled the odor of alcohol on Burroughs, from about 2 feet, but was unable to determine whether it was

beer, whiskey, wine or any particular beverage. He testified that, "it is a fair statement to say that to determine how much Burroughs might have had to drink, I couldn't say." "I couldn't say whether he was sober or intoxicated. I did not charge him with drunk driving." The officer concluded that when Burroughs was being put in the ambulance "his condition was the same as when he was lying on the ground, semi-conscious."

Edward Barton testified that as soon as the car his wife was driving came to rest, he ran to the plaintiff's car and pulled him out because it was on fire around the hood. After leaving Nystrom at the shoulder of the road, he ran to Burroughs' car and found Burroughs bleeding around the head and nose and he gave the latter his handkerchief. He stated that Mrs. Fossum, a nurse, then came along and when she observed Burroughs leaning against his car she told him to lie back down immediately. Barton testified that Burroughs was not fully conscious and that he never did have a conversation with Burroughs, although when he helped put Burroughs down on the blanket, he could smell alcohol on Burroughs' breath. Both he and Mrs. Fossum were rendering Burroughs aid at that time. Barton stated: "From my observation of Burroughs immediately after this collision and also when the nurse was present, I have an opinion as to whether he was intoxicated or not. My opinion is I think he was drinking quite heavily and was drunk." He said he had no way of knowing the amount of intoxicating liquor Burroughs supposedly drank. He smelled something on his breath. He said he was not basing his opinion on the fact he smelled alcohol on his breath. In a pre-trial statement he had said, inter alia, that he would have no way of knowing Burroughs' state of sobriety.

Mrs. Leonard Fossum testified that she was a registered nurse, supervising the Oak Glen Nursing Home

341

■■■■■■

in Coal Valley. At the time of the accident she was returning home from work and when she arrived at the scene she saw the plaintiff's car burning in the vicinity of Danielson's farm. She went up to where Burroughs was leaning against his car and bleeding about his face and head. She told Trooper Robertson to get a blanket so they could wrap Burroughs up. In examining Burroughs she found that his "pulse was weak and thready and his breathing was shallow and slow and he could say nothing coherent," and that he seemed to be semi-conscious and in shock. She stated that a weak pulse, thready pulse, shallow breathing and slow breathing is consistent with a state of shock and proper first aid treatment for shock is wrapping in a blanket and keeping the party warm, and that treatment was given to Burroughs at her suggestion, although it was a hot night. She further testified that he was seemingly intoxicated from the way he was limp and the odor of alcohol on his breath and his weak pulse. She was 2 or 3 feet from him and noticed the odor of alcohol.

Walter Scott, who was in Al Bub's Tavern in Woodhull, on the night in question, testified as follows: I had never seen Burroughs prior to June 25, 1959. He was a total stranger. We had a conversation and as near as I can remember it was about the heat, how hot it was that day. We talked about how hot it was in the shop and after I mowed the yard and got hot and sweaty. I believe I had a bottle of beer in front of me when he came in. He ordered a beer too. We then got to talking about lawnmowers. Burroughs consumed his beer. I don't remember exactly but I imagine we ordered 1 or 2 further drinks. I imagine I had another bottle of beer beside that. I don't remember. It has been a year and a half ago. Burroughs had 2, maybe 3 beers at the most. I didn't know the fellow so I didn't pay for his beer. I believe they were 12

oz. bottles that the beer came in. Scott said when the tavern closed at 11:00 p. m. he and Burroughs went to Scott's car and talked and then he took Burroughs to his car and let him out. He said Burroughs carried on a normal conversation and was not intoxicated. He says he, Scott, went home and was home by 11:20 or 11:25 p. m.

Burroughs was 39 years old, weighed about 130 pounds, lived in Andover, and worked for a farmer. He had arisen at 5 a. m. on the date in question, started work about 6:30 a. m., it was hot, he put up hay most of the day, he was tired when he was through about 6:30 p. m., went home, showered, and ate very little for supper. After a couple of family errands he went into Woodhull about 10 p. m. He parked across the street from the tavern. He was driving a 1951 DeSoto; he did not know the name of the tavern but has been told it was Bub's; he sat on a stool by the bar and ordered a can of beer and paid for it. There were 3 or 4 other people there. He believes that Mr. Scott was sitting on his right, and he engaged in conversation with him. "I had, I don't know, one or two more beers. I am not exactly positive." Burroughs told Scott he was a stranger in the vicinity and had no friends and wanted Scott to bring his wife over to visit Burroughs and his mother where they lived in Andover, a few miles from Woodhull. Scott said he would but Burroughs was afraid Scott would forget all about it in a day or so and never do it. Scott in order to bind the agreement stated he would switch cigarette lighters with Burroughs and then Burroughs would know Scott would be over to get his lighter. Burroughs stayed there until closing time, and then went out across the street, and then he said Scott and he sat in Burroughs' car and talked for quite awhile, an hour, he believed, or it could have been more than an hour. Scott went home, and Burroughs

343

started home. He drove north out of Woodhull, and was involved in the collision, and his car was a total loss. Burroughs said he paid 25¢ for a can of beer and was in the tavern for approximately an hour, but he could have had one more, as well as two more beers, The Court sustained an objection to a question by the defendant as to how much money Burroughs had with him when he got to Woodhull that night. He was pretty tired, and it was late, and he went to sleep at the wheel. He had never driven the road in an automobile before. He was driving along, and as far as he can recall all he saw was a big flash, and the next thing he remembered was the highway patrolman trying to talk to him in the hospital.

On the third day of the trial, when the defendants had the opportunity to present their case, they called Forrest Litterly, a chemist, employed by the Illinois State Bureau of Criminal Identification and Investigation since 1951. After stating his name, address and profession, the plaintiff made the objection that the witness should not be permitted to testify since his name did not appear on the list of witnesses demanded by the plaintiff from the defendants prior to trial by the plaintiff's written interrogatories. An offer of proof was made by the defendants. The plaintiff objected that the testimony was irrelevant, incompetent, immaterial, and invaded the province of the jury, and the witness was not a proper expert witness on the question of intoxication. From the defendants' offer of proof Litterly ran tests on blood specimens from humans to test for alcoholic content. He has done research on alcoholic effects. He has collaborated with the inventor of the intoximeter. He said a person's system oxidizes and eliminates alcohol at a constant rate. As to a hypothetical man, age 39, weighing 130 lbs., with very little to eat during the day, who had 3 twelve ounce bottles or cans of beer between

10–11 p. m.,—he would not have been intoxicated at midnight. The defendant's attorney offered proof he'd not met Litterly until the day he was presented as a witness and had no prior intention to call him as a witness, and Litterly knew nothing of the facts of the case until the third day of the trial, and this is the first time the attorney had sought to use "expert" testimony of this nature in a dram shop case. There had been no blood alcohol test of Clifford Burroughs. Litterly had no previous knowledge of Burroughs of any kind. The court sustained the objections and refused to admit the testimony of that defendants' witness, Forrest Litterly.

Burroughs' mother, Ruby Lemon, said Burroughs had only coffee for breakfast. He did not eat much at supper in the evening. The Court sustained an objection of the plaintiff to a question of the defendant as to how much money he had with him that evening. An offer of proof was made that he had less than $1.00 the day of the accident.

The defendant Al Bub, inter alia, testified Scott might have been in the tavern that evening but he had no recollection of whether Scott was or was not. Over the defendants' objection the plaintiff read, for impeachment purposes, Bub's answer, given by his attorney, reading "Walter Scott" to a pretrial interrogatory asking the names of anyone knowing the activities of Burroughs at the tavern on June 25, 1959.

As to whether there was no competent evidence to establish the intoxication of Clifford E. Burroughs, a motion for directed verdict or for judgment notwithstanding the verdict presents the single question whether there is in the record any evidence which, standing alone and taken with all its intendments most favorable to the plaintiff, here, tends to prove the material elements of his case; only where there is a complete absence of probative facts to sup-

port the conclusion reached does reversible error on this account appear; the inquiry is whether the result reached is reasonable on the facts in evidence, not whether other conclusions might also have been reached: Lindroth v. Walgreen Co. et al. (1950) 407 Ill 121, 94 NE2d 847. Whether a person is drunk or sober are facts patent to the observation of all, and their comprehension requires no peculiar scientific knowledge: Dimick v. Downs (1876) 82 Ill 570. If the evidence be conflicting the controverted question of fact is settled by the verdict: Cox v. Hrasky et al. (1943) 318 Ill App 287, 47 NE2d 728. Beer is an alcoholic liquor, and it is a matter of common knowledge that all alcoholic liquors are intoxicating in varying degrees; the effect of alcohol upon all persons is not the same but may be widely different, and an individual who has had only a slight amount to drink may be more dangerous than a person who shows more noticeable signs of intoxication: Osborn et al. v. Leuffgen et al. (1942) 381 Ill 295, 45 NE2d 622. Considering all the facts and circumstances in evidence here we believe there is competent evidence, standing alone and with all its intendments most favorable to the plaintiff, tending to prove the intoxication of Clifford E. Burroughs.

We think there was no reversible error in refusing to admit the testimony of the defendant's witness Forrest Litterly. The plaintiff's written interrogatories asked for the names of any person having knowledge of the relevant facts concerning the matters and issues in the case, and in their answer thereto the defendants did not list Forrest Litterly. Interrogatories may relate to any matters which may be inquired into by deposition, Supreme Court Rule 19–11, and on a deposition the deponent may be examined regarding, inter alia, the identity of persons having knowledge of relevant facts, Supreme Court Rule 19–

346

4. Further, the defendants refer us to no case where testimony of the type here offered, and by a witness of the nature here presented has been held to be admissible under analogous facts and circumstances. This does not involve a blood alcohol sample test of the particular party concerned. It involves offered testimony of an entirely different nature. Expert testimony is admissible when the subject matter is of such a character that only persons of skill and experience in it are capable of forming a correct judgment as to any facts connected therewith; where the Court and jury can make their own deductions they should not be made by those testifying: People v. Jennings (1911) 252 Ill 534, 96 NE 1077. The question of the qualification of an expert rests largely in the discretion of the trial court: Mahlstedt v. Ideal Lighting Co. (1915) 271 Ill 154, 110 NE 795; Devine v. Delano et al. (1916) 272 Ill 166, 111 NE 742. There was no abuse of discretion here.

 The plaintiffs' witnesses Barton and Fossum were entitled to give their opinions that Burroughs was intoxicated. Intoxication is a fact which may be proven as other facts are proven; a witness, by observation and the exercise of his perceptive faculties, can learn and know facts, and such facts he may state; he may state the fact of intoxication, a fact which can be ascertained by personal observation, as he ascertains other facts: City of Aurora v. Hillman (1878) 90 Ill 61; Suppe et al. v. Sako et al. (1941) 311 Ill App 459, 36 NE2d 603; Thomas et al. v. Smith et al. (1956) 11 Ill App2d 310, 137 NE2d 117; Vandeveer v. Preston et al. (1957) 13 Ill App2d 29, 140 NE2d 521.

 ██ Another point urged by the defendants is that the trial court erred in refusing to admit the defendants' Exhibit No. 2, which was the plaintiff's common law complaint in the separate suit of Nystrom

347

v. Burroughs, on the ground that the complaint contained a judicial pleading admission that Burroughs was overcome by sleepiness and fell asleep at the wheel of his automobile, and in consequence thereof crossed the highway and collided with Nystrom's automobile. That complaint was the separate common law suit by Nystrom against Burroughs, pending in the Circuit Court of Henry County. The defendants, however, refer to only one charge of negligence stated in that case. Actually there were six *alternative* charges against Burroughs, including the charge of driving while intoxicated. That complaint, as an alternative pleading, is protected by the Civil Practice Act, Ch 110 Ill Rev Stats, 1961, par 43(2), from being introduced as an admission in evidence in this dram shop case. Alternative fact allegations made in good faith and based on genuine doubt are not admissions against interest so as to be admissible in evidence against the pleader: McCormick v. Kopmann et al. (1959) 23 Ill App2d 189, 161 NE2d 720.

There are two other errors urged, one being an alleged error in allowing counsel for the plaintiff, over the objection of the defendants, to read a previous plaintiff's written Interrogatory and the Answer of the defendant Bub's attorney given thereto to the effect that Walter Scott was a person who had knowledge of Burroughs' activities in the tavern on the date concerned. We do not believe there was any error committed by the Court in this respect. The answers to written interrogatories may be used in evidence to the same extent as a deposition, Supreme Court Rule 19-11, and a deposition may be used for the purpose of impeaching the testimony of a witness in the same manner and to the same extent as any inconsistent statement made by a witness, Supreme Court Rule 19-10. The defendants' attorney had authority to make the admission; the weight to be given

348

the testimony and the admission were for the jury: Haskell v. Siegmund et al. (1960) 28 Ill App2d 1, 170 NE2d 393. The defendants were not deprived of any opportunity to explain the answer.

██ ██ The other alleged error is sustaining the plaintiff's objection to certain circumstantial evidence attempted to be introduced by Burroughs and his mother. On cross-examination of Burroughs the Court refused to permit him to answer a question as to how much money he had with him when he got to Woodhull that night. On direct examination of his mother, Mrs. Ruby Lemon, another witness, she was refused the opportunity to testify as to how much money her son had with him that evening, and the offer of proof by her was he had less than $1 on the day of the accident. It was the court's view that this was an instance of attempting to prove an inference on an inference, and that the amount of money that Burroughs had that evening or earlier in the evening or day was not proper circumstantial evidence on the question of how much beer he consumed in the tavern that night. We agree with the trial court. A presumption cannot be based upon a presumption, or an independent inference upon another inference: Ohio Bldg. Safety Vault Co. v. Industrial Board etc. et al. (1917) 277 Ill 96, 115 NE 149.

We find no error in the indicated rulings, and we believe there was evidence to sustain the jury's finding that Burroughs was intoxicated at the time of and just prior to the collision, and the verdict is properly supported.

The judgment is affirmed.

Affirmed.

WRIGHT, P. J. and SPIVEY, J., concur.