ZOLA McCULLOUGH, Adm'r of the Estate of Robert A. McCullough, Plaintiff-Appellant, *v.* GLEN A. McTAVISH, JR., *et al.*, Defendants-Appellees.

Second District   No. 77-5

Opinion filed August 9, 1978.

Dowling & Safanda, of St. Charles, for appellant.

Fredrick J. Fraterrigo, of Kralovec, Sweeney, Marquard & Doyle, and Edward V. Scoby, both of Chicago, and Brittain, Ketcham, Strass & Terlizzi, of Elgin, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

In a wrongful death action to recover for the death of Robert A. McCullough brought against Glen A. McTavish, Jr., and Guy B. Armentrout, the jury returned a verdict of guilty as to Armentrout, awarding damages in the amount of $50,000, and not guilty as to McTavish. However, in answer to a special interrogatory the jury found that the decedent had been contributorily negligent. The trial court then entered judgment in favor of both defendants and plaintiff appeals.

Approximately 9 p.m. on July 3, 1975, Armentrout was proceeding north on Randall Road near Elgin when his motor began to "miss" and shortly stopped. He coasted, with half of his car ending up on the road and half off. Armentrout's brother-in-law, David Stevens, fortuitously arrived on the scene and the two men pushed the Armentrout car so that

only the left rear remained on the road. Stevens drove his car so that it faced the Armentrout car and both men tried to "jump-start" the stalled vehicle. The rear end of Armentrout's car was unlighted at this time. The night was dark and the highway wet; with the testimony in conflict as to whether it was actually raining. While Armentrout and Stevens were trying to start the car McTavish approached from the south. He noticed the Armentrout vehicle protruding three or four feet into his northbound lane, and brought his car to an abrupt halt to avoid colliding with the stalled vehicle. About a second later a Honda motorcycle driven by plaintiff's decedent, Robert McCullough, struck the left rear of the McTavish car. McCullough was propelled out of his seat and into the path of a vehicle which was approaching from the north, in the southbound lane, resulting in his death.

The plaintiff principally contends that the court should have set aside the special interrogatory and entered judgment for the plaintiff on the general verdict against Armentrout; or alternatively, should have granted a new trial at least with respect to defendant Armentrout on the ground that the special answer was contrary to the manifest weight of the evidence. In addition, plaintiff contends that he was deprived of a fair trial by errors in instructing the jury on intoxication and on speeding. Plaintiff also claims that the court should have granted a new trial on the basis of newly discovered evidence.

■■■ We first conclude that the trial court committed reversible error in instructing the jury over plaintiff's objection on the issue of decedent's intoxication (IPI Civil Nos. 12.01, 60.01 (2d ed. 1971)). Instructions must be predicated upon evidence and where not based upon the evidence should not be given. (*Grant v. Joseph J. Duffy Co.*, 20 Ill. App. 3d 669, 683 (1974). See also *Doria v. Costello*, 22 Ill. App. 3d 505, 512 (1974).) The mere consumption of intoxicating beverages does not establish intoxication; there must be proof of facts tending to show that the drinking resulted in intoxication (*Kessner v. McDonald*, 46 Ill. App. 3d 333, 336 (1977); *Shore v. Turman*, 63 Ill. App. 2d 315, 321 (1965)). Intoxication may be shown by opinion evidence (*Nystrom v. Bub*, 36 Ill. App. 2d 333, 346 (1962)), or by evidence of drinking intoxicants plus unusual behavior. (*Felker v. Bartelme*, 124 Ill. App. 2d 43, 47 (1970).) It is error to give an instruction dealing with contributory negligence on the grounds of intoxication when there is no evidence of intoxication. *Shore v. Turman*, 63 Ill. App. 2d 315, 321 (1965).

In this case there was evidence that the decedent had had two beers and two or three mixed drinks in the five hours or so prior to the accident, but no evidence as to how much whiskey was contained in each of the two or three mixed drinks. No opinion evidence was adduced indicating that the decedent was intoxicated at any time in the several hours before

the accident. There was no evidence of slurred speech, uneven gait, or any other indicia of intoxication. Nor was there any evidence that the decedent had driven his motorcycle in an erratic fashion just prior to the accident. Even if the jury was justified in believing from the evidence that decedent had been following the McTavish vehicle too closely and had been going too fast for conditions, the proof would have been insufficient to prove intoxication.

■■ The plaintiff has also argued that the trial court should have, in any event, given an instruction defining "intoxication" when it gave the instructions which stated that evidence of intoxication is a factor in determining if plaintiff's decedent was guilty of contributory negligence (IPI Civil No. 12.01 (2d ed. 1971)) and that driving while intoxicated is against the law (IPI Civil No. 60.01 (2d ed. 1971)). Plaintiff argues that it then became the duty of the court to define intoxication (IPI Civil No. 150.15 (2d ed. 1971)) *sua sponte* or, alternatively, that the defendants were responsible for offering the defining instruction. While we have concluded that no instruction should have been given on the subject of intoxication and recognize the general rule that it may be reversible error not to define intoxication in a civil suit where the evidence supports the charge (*Shore v. Turman*, 63 Ill. App. 2d 315, 322 (1965)), it is also generally true that a plaintiff who does not tender the instruction is precluded from complaining of the omission. (Ill. Rev. Stat. 1975, ch. 110A, par. 366(b)(2)(i).) We are not persuaded by plaintiff's argument that since he objected to any instruction on the issue of intoxication it would have been inconsistent to have tendered an instruction defining intoxication. Plaintiff could, of course, have offered the instruction and yet preserved his objection for the record. Under these circumstances the error is not cause for reversal.

■■ Giving the instruction on speed over plaintiff's objection as an element of plaintiff's alleged contributory negligence (IPI Civil No. 60.01 (2d ed. 1971)) is also claimed as reversible error. There is evidence that the decedent was driving his motorcycle at a speed of at least 40-45 miles per hour on a dark, wet night, with a conflict as to whether it was actually raining at the time and place of the collision. There is therefore "some evidence" to support an instruction which included the provisions: "the fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway or by reason of weather or highway conditions." An instruction on speed calls upon the jury to examine all the facts and circumstances in evidence including the speed of the vehicles and then to decide whether a party should have reduced his speed to avoid a collision. (*Figarelli v. Ihde*, 39 Ill. App. 3d

1023, 1028 (1976); *Wrighthouse v. Brown*, 52 Ill. App. 2d 191, 196-97 (1964).) A party can drive under the speed limit and still drive too fast for existing conditions. (*Nei v. Contracting & Material Co.*, 93 Ill. App. 2d 226, 230 (1968).) There therefore was no error in the giving of the instruction on speed.

■■ We have considered whether the error which we have found in the giving of the instruction on intoxication requires reversal. We conclude that, in the case against the defendant Armentrout, we must reverse and remand for a new trial. There was ample evidence in that portion of the case to support the jury's verdict that Armentrout was negligent in leaving his car with a portion of it hanging over the roadway in view of evidence that he and his brother-in-law had the strength to push the car further if they had exerted themselves, but neither did so nor took any steps to warn approaching vehicles. Whether error in giving instructions amounts to reversible error "must necessarily depend upon the character and amount of proof in the record tending to support the finding and judgment of the court and the amount and character of the evidence *contra*." (*Grosh v. Acom*, 325 Ill. 474, 494-95 (1927). See also *Both v. Nelson*, 31 Ill. 2d 511, 515 (1964).) "[T]he closeness of the evidence, the likelihood of the jury being confused and the possibility of prejudicial effect in submitting the unsupported issues to the jury" are to be weighed. (*Darby v. Checker Co.*, 6 Ill. App. 3d 188, 196 (1972).) Applied to this record, the evidence directed at the contributory negligence of decedent was especially critical and the effect of directing the jury to consider the question of decedent's intoxication without supporting proof was obviously prejudicial and misleading in the case against Armentrout.

■■ "A verdict is not to be construed with the same strictness as an indictment but is to be liberally construed, and all reasonable intendments will be indulged in its support and it will not be held insufficient unless, from necessity, there is doubt as to its meaning." (*Western Springs Park District v. Lawrence*, 343 Ill. 302, 310 (1931).) "Of course, the court cannot merely assert that which the jury ought to have intended; there must be a reasonable basis upon which to find what it did intend." *Bencie v. Williams*, 337 Ill. App. 414, 420 (1949).

The instant verdict, reasonable construed, indicates that the jury found McTavish not guilty of negligence, Armentrout guilty of negligence, and the decedent guilty of contributory negligence. Indeed, a finding of no negligence as to McTavish "is the only finding consistent with the verdict the jury returned." *Sesterhenn v. Saxe*, 88 Ill. App. 2d 2, 11 (1967).

The erroneous instructions on intoxication were highly prejudicial to the plaintiff on the issue of the plaintiff's decedent's contributory negligence; however, those instructions had no bearing whatever on the issue of defendants' actionable negligence. Hence, in light of our

interpretation of the jury's verdict (*i.e.*, no negligence as to McTavish; negligence as to Armentrout; contributory negligence as to the decedent), we must affirm the judgment as to McTavish if supported by ample evidence.

■■ Here, McTavish was confronted with an emergency situation when he observed Armentrout's vehicle protruding into the highway, in his lane of traffic, a short distance ahead. Whether his action in bringing his vehicle to an abrupt halt, in the hope of avoiding a collision, constituted negligence was pre-eminently a question for the jury. "It is a principle of law well recognized in this State that the driver of a vehicle who is faced in a sudden emergency with imminent peril is not required to use the same degree of self-possession, coolness and judgment as when there is no imminent peril. * * *"; and whether the conduct in those circumstances constitutes ordinary prudence is "peculiarly a question of fact for the jury." (*Roady v. Rhodes*, 326 Ill. App. 49, 54 (1945). See also *Wong v. Richards*, 10 Ill. App. 3d 514, 516 (1973); *Goldberg v. Capitol Freight Lines, Ltd.*, 314 Ill. App. 347, 353 (1942), *aff'd*, 382 Ill. 283 (1943).) Thus, we are unable to say that the jury's exoneration of McTavish, under the circumstances of the instant case, was unsupported by the evidence or contrary to its manifest weight.

Plaintiff has also argued that the court erred in denying its motion for a new trial against McTavish on the basis of newly discovered evidence. The plaintiff alleged in its post-trial motion that after the close of the evidence plaintiff's counsel was informed by the defendant McTavish in the presence of McTavish's counsel that his flasher emergency lights were not functioning. Plaintiff argues that McTavish's admission that the flashers did not work implies that the brake lights would not work either, on the theory that the rear flasher lights and the rear brake lights on McTavish's 1975 Camaro operate by the use of a single bulb with two filaments, one of which lights the regular taillight and the second of which lights both the flasher lights and the brake lights.

■■ Granting or denying a motion for a new trial on the basis of newly discovered evidence lies within the discretion of the trial court and its exercise of that discretion will not be disturbed absent a showing of abuse. (*Interstate Printing Co. v. Callahan*, 18 Ill. App. 3d 930, 933 (1974).) The motion should be granted, however, where the new evidence is of such a character as will probably alter the result of the first trial, where it appears that the evidence has been discovered since the first trial, and where it is shown that the evidence could not have been discovered before the first trial by the exercise of reasonable diligence. (*Jenkins v. Dearborn Securities Corp.*, 42 Ill. App. 3d 20, 23-24 (1976).) Since the alleged admission was made at the close of the evidence and it is conceded by plaintiff's counsel that the case had not gone to the jury nor

was any motion made to the court at the time, the evidence cannot be properly considered as newly discovered.

██ ██  In any event, the evidence is not of a character which would probably alter the result of the trial. McTavish testified that his lights were on just prior to the accident but that before the police arrived after the accident he turned them off. In addition, the sheriff's deputy who arrived on the scene testified that he tested McTavish's brakes immediately after the accident and while sitting in the driver's seat with his foot on the brake pedal observed that there was a red flash in the night. At best the admission would do no more than make it somewhat more likely that when McTavish applied the foot brake just before the accident only the right rear brake light flashed. It would not discredit his statements to the effect that his rear taillights were on just before the accident. The trial court did not abuse its discretion under the circumstances. See *Pritchett v. Steinker Trucking Co.*, 40 Ill. 2d 510, 512-13 (1968).

Plaintiff has also argued that the court erred in allowing Armentrout's counsel to argue to the jury in his closing statement that damages should be mitigated in light of the fact that decedent was contemplating marriage and would probably have married soon. In order to give direction to the trial court should this same issue be present in a new trial, we will comment briefly on the question. A majority of jurisdictions which have considered this issue have held that the prospect of matrimony by a child is relevant to the issue of the parents' pecuniary loss in a wrongful death action. See, *e.g., Livaccari v. Zafonte*, 367 N.Y.S.2d 808, 813, 48 App. Div. 20 (1975); *Kowtko v. Delaware & Hudson R.R. Corp.*, 131 F. Supp. 95, 104 (M.D. Pa. 1955); *Bolino v. Illinois Terminal R.R. Co.*, 200 S.W.2d 352, 359 (Mo. 1947); *Robinson v. Dickson*, 91 N.H. 29, 13 A. 2d 163, 167 (1940). Also, see generally Annot., 7 A.L.R.2d 1380 (1949).

██ The plaintiff has cited no Illinois case on the precise question nor have we found one. However, plaintiff relies on the analogous rule that remarriage of a surviving spouse or the possibility of remarriage is inadmissible in a wrongful death action brought by the spouse for the wrongful death of the deceased. (See, *e.g., Watson v. Fischbach*, 54 Ill. 2d 498, 500 (1973); *Hardware State Bank v. Cotner*, 55 Ill. 2d 240, 248-49 (1973).) The apparent reason for the rule is that the defendant should not be allowed to profit by an actual or possible remarriage of a widow just as he may not profit through monies coming to her from insurance policies or from some other collateral source. (See *Reynolds v. Willis*, 209 A.2d 760, 763 (Del. 1965).) The fact of a widow's actual or possible remarriage is thus properly excluded under the rule that a defendant may not introduce evidence, for the purpose of mitigating damages, that shows that the plaintiff has received some benefit, incident to the complained of

injury, from a collateral and independent source. (See, *e.g., Biehler v. White Metal Rolling & Stamping Corp.*, 30 Ill. App. 3d 435, 444 (1975).) The fact that a deceased child would have married in the foreseeable future but for the complained of injury is obviously not a benefit coming to the aggrieved parents as an incident of the injury. Rather, the prospect of marriage by a deceased son or daughter is a factor which must be considered in determining actual pecuniary loss to the parents. We conclude that the trial court did not err in allowing Armentrout's counsel to refer to the possibility that the decedent might have married in the near future.

For the reasons which we have stated we therefore affirm the judgment in favor of the defendant Glen A. McTavish, Jr. and reverse the judgment entered in favor of the defendant Guy B. Armentrout and remand that portion of the case to the trial court for a new trial.

Affirmed in part; reversed and remanded in part with directions.

WOODWARD and NASH, JJ., concur.