NORMAN ESLEY KIRK *et al.*, Plaintiffs-Appellees, *v.* WALTER E. DEUCHLER ASSOCIATES, INC., *et al.*, Defendants-Appellants.

Second District   No. 77-432

Opinion filed December 7, 1979.

Peregrine, Stime & Newman and Roger K. O'Reilly, both of Wheaton, for appellants.

John M. Lamont, of Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

The plaintiff herein and his wife brought suit against the Aurora Sanitary District (District) and Walter Deuchler Associates, Inc. (Deuchler) under the Structural Work Act (Ill. Rev. Stat. 1973, ch. 48, pars. 60-69). Plaintiff was employed by the Matt Walton Sewer Construction Company (Walton), which was installing a sewage system in Aurora for the District. Walton is not a party to this action, and it is surmised that plaintiff proceeded under the Workmen's Compensation Act, insofar as the liability, if any, of Walton was concerned.

Trial was had in the circuit court of Kane County in February 1977. During that trial a great deal of evidence was introduced by the plaintiffs. At the close of the plaintiffs' case they were allowed to amend their original complaint to conform to the proofs. In essence the amended complaint alleged that the defendants violated the Structural Work Act by allowing the use of a particular method of lifting the load which injured the plaintiff and also by the failure of the defendants to require the use of a complete and adequate system of hand signals in conjunction with that lifting system. At the same time each of the defendants moved for a directed verdict on the grounds that they were not in charge of the work and that the plaintiffs had not proven a case as a matter of law. These motions were denied. Neither of the defendants presented any testimony.

The jury returned a verdict for the plaintiff, Norman Kirk, in the sum of $250,000 for actual and prospective damages and $20,000 in actual and prospective damages to the plaintiff Helen Kirk for loss of consortium. The post-trial motions for judgment n.o.v. of the defendants were denied, and they appeal.

Four issues must be resolved to properly dispose of this case: (1) whether a jury question existed as to which, if either, of the defendants were "in charge of the work"; (2) whether section 67 of the Structural Work Act imposes liability as a matter of law upon an engineer or architect for the absence of a complete or adequate system of signals for use in the lifting or hoisting of materials on a job site; (3) whether the evidence fails to support the jury's verdict in favor of the plaintiff; and

(4) whether the trial court committed prejudicial error related to voir dire examination, admission of evidence, or instructions to the jury.

## I

We consider first who was "in charge of the work." Section 9 of the Structural Work Act (Ill. Rev. Stat. 1977, ch. 48, par. 69) provides, in pertinent part, that "[a]ny owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of * * * or other structure within the provisions of this act * * *" shall be liable "[f]or any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured * * *."

We have examined the record and conclude that it would serve no purpose to set out the contractual relationship between the defendants and the plaintiff's employer in detail. It is sufficient for us to note that the District had the right to take over the work upon 10 days notice after a failure by Walton to fully or adequately perform the work; or due to his financial incapacity. Additionally, the District had its limited right to modify the plans during the project as well as the right to inspect the system prior to its acceptance. The sole direct connection between the District and the work on the site was an inspector in its employ. That inspector, Gerald Abel, appeared at the site for an undetermined period of time most every day that work was in progress. His instructions from the District were to report back to them as to the quality of the work being performed. The record reveals that upon occasion, however, Abel gave "advice" to Walton's foreman on the site. However, the record is equally clear that this "advice" was informal in nature and was outside the scope of Abel's actual authority.

Deuchler, the general project engineer, acted as the District's principal agent under the contract. As such, it was vested with authority to approve suspensions in the work; to itself suspend the work due to unfavorable weather conditions or other factors; to make or approve variations in plans or materials; and to require the removal of a contractor's employee from the project for carelessness, obstructionism or incompetence. Additionally, the engineer had an independent right to inspect the project. To this end it maintained its own field inspector on the site to monitor quality control. The record also reveals testimony by the Walton Construction Company's co-owner, Hallie Gene Moore, that the engineer (an employee of Deuchler) was "virtually our boss."

■■ The standards which are to be applied in reviewing whether a jury properly found a defendant to be "in charge of the work" under the Structural Work Act have been recently discussed by the supreme court in

*Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 485-86, 394 N.E.2d 403, 405, where the majority stated that: "The question of who has charge of the construction is a question of fact for the jury. [Citations.] Moreover, this court has determined that the term 'having charge of' should not be defined for the jury because it is 'one of common usage and understanding, and * * * further attempt at definition can only lead to confusion and error.' [Citation.] Hence Illinois Pattern Jury Instructions Civil, section 180.16 (2d ed. 1971), provides for no such instruction."

■■ The facts involved in *Norton* closely parallel those in the case before us with regard to the Aurora Sanitary District. It, like the school district in *Norton*, was related by contract with the injured workman's employer and that contract provided for the rights to stop work and to modify the work in progress, as well as to inspect. Additionally, both the District here and the school district in *Norton* controlled the construction through a general agent. In *Norton* the agent was the architect, here it was the project engineer, Deuchler. The sole difference between these cases, which we do not find to be determinative, is the fact that the school district in *Norton* itself maintained a "clerk of the work" who subjected the site to continuous close scrutiny while here we only had periodic inspection by an employee of the District. As a result of this close similarity to *Norton*, we will not disturb the finding of the jury that the Aurora Sanitary District was "in charge of the work."

■■ Regarding Deuchler, we have a slightly different situation. In *Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 373 N.E.2d 1348, the supreme court specifically held that an architect was clearly within the provisions of the Structural Work Act because he had the contractual right to stop or suspend the work in order to insure the proper performance of the contract. In the instant case, Deuchler had a similar right and, in addition, had the other duties and rights enumerated above. Therefore, we will not disturb the jury's finding that Deuchler was also "in charge of the work."

## II

We are next confronted with the question as to whether Deuchler, the engineer, can be held liable under the provisions of section 7a of the Structural Work Act. With respect to this issue, we observe that the essential violation of the Structural Work Act relied upon by the plaintiffs as a basis of both defendants' liability was their failure to require or insure the use of a complete and adequate signaling system during the operation of the lifting apparatus. Deuchler contends that section 7a does not impose any duty upon an engineer as to signals and thus it cannot be said, as a matter of law, that he committed a wilful violation of the Act. In this

connection "wilful" or "wilfully" has been construed by our supreme court as synonymous with "knowing" or "knowingly" and does not here mean "reckless" or "recklessly." See *Kennerly v. Shell Oil Co.* (1958), 13 Ill. 2d 431, 150 N.E.2d 134.

In *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 175 N.E.2d 785, the supreme court considered in detail the question of the liability of the owner, and in reversing, held that it was a disputed question of fact whether the owner should be deemed to be in charge of the work and that this issue should have been submitted to the jury under proper instructions to make that determination.

In *Gannon* the court reviewed in detail the history and decisions of the courts following the enactment of the Structural Work Act in 1907, modelled on the New York act. The Act was first construed by the supreme court in *Claffy v. Chicago Dock & Canal Co.* (1911), 249 Ill. 210, 94 N.E. 551. The court reviewed that case and subsequent decisions in detail as to civil liability under the Act.

■ The question presented herein is whether section 7a of our act, pertaining to the maintenance of an adequate signaling system by "\* \* \* the owner, contractor or sub-contractor \* \* \*" encompasses liability under section 9 set forth above, which refers to "[a]ny owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction \* \* \*." The supreme court directly decided this question in *Gannon* as follows:

> "Moreover, the plain words of the statute preclude plaintiff's interpretation. The act specifies, 'Any owner, contractor, sub-contractor, foreman or any other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of the act, shall comply with all the terms thereof, \* \* \*.' It is inescapable from these words that the legislature intended to hold liable those named persons who are in charge of the work, and the words 'or other person' were included to cover the situation where someone other than the named persons was in charge of the work, in order to prevent such person from escaping liability." (22 Ill. 2d 305, 319, 175 N.E.2d 785, 792.)

We therefore find that having determined that defendant Deuchler, as well as the owner, was in charge of the work, Deuchler comes within the purview of section 9 of the Act. The jury having made this determination, and having determined liability on Deuchler, the engineer, we are not in a position to substitute our opinion for that of the jury.

### III
We next turn to the general question of whether the facts introduced

by the plaintiff are sufficient, under *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, to defeat the motion of the defendant District for directed verdict and judgment *n.o.v.* In *Pedrick* the Illinois Supreme Court held that such motions should be granted only when all the evidence, when viewed in the aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. To resolve this issue we must examine the facts which were before the jury, viewing them in the light most favorable to the plaintiff.

On March 5, 1973, a backhoe operated by Charles Herbin was being used as a hoisting apparatus to install a concrete, asymmetrical, truncated cone section upon a partially completed cylindrical manhole assembly. Assisting in that operation were Lloyd Gooch, Frank Cortez and the plaintiff, Norman Kirk. In the period of time immediately prior to the injury of the plaintiff, a particular load attachment system was in use which consisted of two steel eye-bolt pins which were inserted into holes located at the balance points of the cement cone. Those pins, in turn, were connected by cables to a hook located on the underside of the backhoe's bucket. The two-pin attachment system had been used to install other sections of the manhole and, indeed, the two-pin system was the only one provided by the manufacturer for the installation of those other sections. At the time of the accident the plaintiff had entered into the manhole assembly to line up the steps of a ladder which were moulded into the assembly, as the cone was lowered into place. Gooch was located next to the manhole and helped the plaintiff guide the section so that it could be lowered. With both hands on the section, Gooch looked directly at Herbin and nodded. Herbin then lowered the section into place. Gooch then successfully removed the pin which was facing Herbin. Simultaneously, Frank Cortez, who was next to the manhole at the bottom of the trench, attempted to remove the other pin with his shovel, an action which shook the cable but did not remove the pin. At this point the backhoe bucket went up, raising the south side of the cone to which it was still attached. As a result of this motion, the cone struck the plaintiff in the back, severely injuring him. It is uncontradicted that no signal or gesture of any kind was made by any of the workmen to Herbin prior to the raising of the bucket.

We note parenthetically Gooch's testimony that the backhoe had been raised on prior occasions on this particular jobsite without a signal being given. However, the number of those occurrences and the circumstances surrounding them were not explored by either party, therefore a pattern and practice of action could not be fairly said to have been established upon which an inference of other conduct could be drawn.

The testimony of an expert witness was offered by the plaintiff to show primarily that the workmen at the site were not using a signaling system which conformed to either safe practice or the standards of the industry and, secondarily, to establish that an alternative lifting system for the cone section in question was provided by its manufacturer. Furthermore, his testimony established that the alternative lifting system consisted of three steel hoops embedded in the top of the cone and that those hoops could be connected to the lifting mechanism by a 3-point chain and hook arrangement. The expert specifically testified that the alternative 3-point system was the "best and safest" system which could have been used and that it had an advantage over the 2-pin system in that the operator could directly view all the points of contact between the cone and the backhoe attachment. We note, however, that he did not testify at any time that the 2-pin system which was utilized on the construction site was unsafe per se or that it was unsafely operated. He did give an opinion that the entire "material handling system" (a term which apparently included both the signaling and attachment methods) used on the job was unsafe. However, from the remainder of his testimony it is clear that the principal factor, in his opinion, was the lack of a proper signaling system.

The key difficulty with the overall sufficiency of plaintiff's case includes the lack of direct evidence introduced to show precisely why Herbin raised the bucket. Herbin died prior to trial, but his unavailability does not automatically eliminate the need for some link of causation between the lack of the signaling system and the raising of the bucket. Thus, the critical issue is whether sufficient circumstantial evidence exists to justify the jury's conclusion that the accident was occasioned by the lack of an adequate signaling system.

Although this is a close question, we believe that application of the rule in *Pedrick* mandates a holding that there was sufficient circumstantial evidence to support the verdict of the jury. Once the cone section was in position to be lowered, the backhoe operator's actions should have been regulated by signals to prevent the bucket from being raised. Although it cannot be said with certainty why it was raised, there appears to be enough circumstantial evidence to eliminate equipment malfunction or deliberate misconduct by Herbin. It does not appear to be too great a logical step to conclude that the accident was occasioned by the inability of the work crew to control, through a signaling system, Herbin's placement of the cone. It is the jury's province to weigh the circumstantial evidence and it has the right to make this type of logical determination if it so chooses. Thus we will not disturb the judgment against the Aurora Sanitary District on this basis.

## IV

Defendants complain about a variety of allegedly improper and prejudicial actions on the part of the trial court judge, the most significant of which we will discuss separately.

■■ Defendants first contend that the voir dire examination of the prospective jurors was improper and contrary to Supreme Court Rule 234 (Ill. Rev. Stat. 1977, ch. 110A, par. 234), which provides in pertinent part that "[q]uestions shall not directly or indirectly concern matters of law or instructions." Specifically, the contention is that the trial court erred in allowing plaintiffs' counsel to repetitiously inquire, in substance, whether the prospective jurors had any disagreement with the proposition that contributory negligence was not a defense to plaintiffs' claim under the Structural Work Act (Ill. Rev. Stat. 1977, ch. 48, pars. 60-69). As the plaintiffs point out, this contention was squarely passed upon by this court in *Schneider v. Kirk* (1967), 83 Ill. App. 2d 170, 176-77, 226 N.E.2d 655, 658, where Justice Davis, in considering the possible limitations of Supreme Court Rule 234, stated:

> "However, it was not intended to prevent counsel from making pertinent inquiries to determine whether a juror might be prejudiced or biased, or to preclude counsel from intelligently exercising his right of challenge for sufficient cause or peremptorily."

We agree with that statement and, although a question of law is involved herein, it is precisely the sort of point on which counsel must have the right to question prospective jurors.

■ The next contention of the defendants is that the trial court erroneously allowed defendants' counsel to read to the jury only a portion of sections 2.16 and 2.32 of the contract between the contractor and the District. It is to be observed that the contract in its entirety was admitted into evidence. Defense counsel wished to read all of sections 2.16 and 2.32 to the jury, primarily as to the issue of who was in charge of the work. These provisions read as follows:

> "2.16 The Contractor shall at all times so conduct his work as to insure the least possible interference with the use of premises and approaches thereto by both the owner and the public. The convenience to the general public and the Occupants of land and buildings along and adjoining the improvement and the protection of persons and property is of prime importance and shall be provided for by the Contractor, without extra compensation, in an adequate and satisfactory manner. The Engineer or the Owner shall not be responsible for the adequacy of the Contractor's safety measures either on or off the construction site."
>
> "2.32 Contractor's Responsibility for Work.

The work shall be under the charge and care of the Contractor until final acceptance by the Owner. The Contractor shall assume all responsibility for any injury or damage to the work during construction and until final acceptance, including damages sustained through action of the elements or from any other cause whatsoever, whether arising from the execution or from the non execution of work. The Contractor shall rebuild, repair, restore and make good, at his own expense, all injuries or damages to any portion of the work incurred during or after its construction and before its final acceptance."

The court ruled that defense counsel could read to the jury the first part of 2.16, omitting the last sentence. The court further ruled that defense counsel could only read the first sentence of 2.32. An offer of proof was made, and defense counsel only read the first sentence of 2.32 and did not read any portion of 2.16. The trial court, in making the above determination, pointed out that the two deleted portions would be highly prejudicial as attempting to determine responsibility for any injury sustained, as they related to the owner, the engineer and the contractor. In the court's opinion the responsibility for resultant injuries was governed by the Structural Work Act and not by the contract between the owner and the contractor. We find that the court was correct in this determination, particularly in view of the fact that the entire contract had been admitted into evidence.

Defendants contend that there was error in the giving of plaintiffs' instruction concerning future earnings losses because relatively little evidence was introduced at trial on such losses and also because the jury was not instructed as to how to reduce future earnings losses to present cash value.

Plaintiffs submitted, and the trial court gave, Illinois Pattern Jury Instructions, Civil, Nos. 30.01, 30.02, 30.04, 30.05, 30.06 and 30.07 (2d ed. 1971) (hereinafter IPI Civil), on the issue of damages, which read in part as follows:

"If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damage proved by the evidence to have resulted from [a violation of the Structural Work Act by] the defendant:
* * *

The value of earnings lost and the present cash value of the earnings reasonably certain to be lost in the future.

Whether any of these elements of damages has been proved by the evidence is for you to determine."

At the conference on instructions counsel for both defendants objected to

the above instruction. Counsel for defendant Deuchler explained his objection as follows:

"It relates to the last paragraph that deals with the value of earnings lost and present cash value of earnings reasonably certain to be lost in the future. I think based on the state of the evidence in this case that element of that instruction is improper because there is no testimony of any kind whatsoever that this man couldn't have obtained some type of employment after his last surgery in June of 1974.

There is no indication or basis for the Jury to speculate, guess, or conjecture in regard to any lost earnings from that point to the present, much less into the future. I think it would be highly improper to give the value of earnings lost up to the present time and the value of earnings lost in the future."

Counsel for defendant Aurora Sanitary District simply stated that he joined in the above comments. At no time did defense counsel object that the jury had not been told how to calculate the present cash value of future loss of earnings. Nor did they, despite the existence of IPI Civil No. 34.02 which goes to this very point, submit any instruction to remedy this alleged defect.

■ We cannot agree with defendants' contention that there was insufficient evidence to allow the jury to conclude that the plaintiff would lose earnings in the future. Plaintiff had not worked full-time since the accident and was no longer able to perform the heavy labor that he had always done in the past. Although additional evidence would be desirable, it was not necessary to bring this issue before the jury. Evidence indicating that plaintiff could perform certain jobs and had returned to school was also presented to the jury, which had the duty to weigh all material relating to plaintiff's alleged loss of future earnings. The question of damages in a personal injury suit is peculiarly one for the trier of fact. (*Premack v. Chicago Transit Authority* (1971), 2 Ill. App. 3d 127, 276 N.E.2d 77.) In the instant case the jury had before it a number of factors, including the pain and suffering of the plaintiff for which there is no simple mathematical formula. Although we might not have awarded the same amount of damages on the basis of the record before us, we will not interfere with the jury's judgment in the absence of some clear error.

■■ Defendants' second contention, involving the lack of any instruction on how to calculate present cash value, is more troubling. Indeed, defendants' substantive argument on the need for such an instruction is correct. Although it is not reversible error, per se, to fail to present a formula for calculating present cash value by giving IPI Civil No. 34.02 (*Kubajak v. VerBrugge* (1965), 59 Ill. App. 2d 344, 207 N.E.2d 344), it is

error to fail to do so in a case like this one where the jury may well have considered loss of future earnings when calculating damages.

■■ Plaintiffs, however, have waived this issue on appeal by not properly preserving it at trial. Supreme Court Rule 366(b)(2) (Ill. Rev. Stat. 1977, ch. 110A, par. 366(b)(2)(i)) states that "[n]o party may raise on appeal the failure to give an instruction unless he shall have tendered it." More specifically, it has been held that a party may waive the failure to give IPI Civil No. 34.02 by neither objecting to the damage instruction nor tendering an instruction from the "34" series of IPI. See *Bunch v. Rose* (1973), 10 Ill. App. 3d 198, 293 N.E.2d 8.

Defendant Aurora Sanitary District attempts to distinguish *Bunch* from the instant case on the grounds that defendant herein did object to the damage instruction. Although this is a distinguishing point, it is not a critical one. We decided a very similar question in *Estate of McCullough v. McTavish* (1978), 62 Ill. App. 3d 1041, 379 N.E.2d 890, wherein the estate of a deceased motorcyclist sued the drivers of two automobiles. The trial court instructed the jury, over the plaintiff's objection, on the issue of decedent's alleged intoxication. (IPI Civil Nos. 12.01, 60.01.) On appeal plaintiff complained of both the giving of these instructions and the failure of the court to give an instruction defining intoxication. (IPI Civil No. 150.15.) Plaintiff in *McCullough*, like defendant Aurora Sanitary District here, argued on appeal that it was not his duty to perfect the instruction he had objected to but that opposing counsel or the trial court should have done so. Justice Seidenfeld, writing for the court, did not accept this proposition, commenting that:

> "We are not persuaded by plaintiff's argument that since he objected to any instruction on the issue of intoxication it would have been inconsistent to have tendered an instruction defining intoxication. Plaintiff could, of course, have offered the instruction and yet preserved his objection for the record." (62 Ill. App. 3d 1041, 1045, 379 N.E.2d 890, 894.)

We believe this issue was dealt with properly in *McCullough* and thus reject the similar argument made in this case. The reason for requiring an objecting party to object or to have submitted an instruction in the trial court is to insure that the trial court is given an opportunity to correct potential errors before they become prejudicial. (*McClure v. Suter* (1978), 63 Ill. App. 3d 378, 379 N.E.2d 1376.) In this case comments made at the instruction conference did not go to the failure to give the jury the formula for calculating present cash value. Thus, the court was not given notice or an opportunity to correct this omission. We hold that, under these circumstances, the defendants have waived this issue on appeal.

We do not decide herein whether an objection on the specific point

urged on appeal without the submission of an accompanying instruction would have been sufficient to preserve the issue despite the apparently absolute language of Supreme Court Rule 366(b)(2)(i).

Both the District and Deuchler have raised the contention that several other instructions given by the trial court were improper, and perhaps not applicable to each defendant. An examination of those instructions discloses that although the contested instructions are subject to criticism, this court does not find that the verdict of the jury would have been any different if the objected-to instructions were either not given or more artfully phrased. Without unduly prolonging this opinion by setting forth specifically the instructions complained of, we find that these instructions complained of do not constitute reversible error.

For the reasons stated herein, the judgment of the trial court is affirmed.

Affirmed.

SEIDENFELD and NASH, JJ., concur.